*341 Justice Breyer
delivered the opinion of the Court.
The federal courts of appeals review federal sentences and set aside those they find “unreasonable.” See, e. g., United States v. Booker, 543 U. S. 220, 261-263 (2005). Several Circuits have held that, when doing so, they will presume that a sentence imposed within a properly calculated United States Sentencing Guidelines range is a reasonable sentence. See, e. g., 177 Fed. Appx. 357, 358 (CA4 2006) (per curiam) (case below); see also United States Sentencing Commission, Guidelines Manual (Nov. 2006) (USSG or Guidelines). The most important question before us is whether the law permits the courts of appeals to use this presumption. We hold that it does.
I
A
The basic crime in this case concerns two false statements which Victor Rita, the petitioner, made under oath to a federal grand jury. The jury was investigating a gun company called InterOrdnance. Prosecutors believed that buyers of an InterOrdnance kit, called a “PPSH 41 machinegun ‘parts kit,’” could assemble a machinegun from the kit, that those kits consequently amounted to machineguns, and that Inter-Ordnance had not secured proper registrations for the importation of the guns. App. 7, 16-19, 21-22.
Rita had bought a PPSH 41 machinegun parts kit. Rita, when contacted by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), agreed to let a federal agent inspect the kit. Id., at 119-120; Supp. App. 5-8. But before meeting with the agent, Rita called InterOrdnance and then sent *342 back the kit. He subsequently turned over to ATF a different kit that apparently did not amount to a maehinegun. App. 23-24,120; Supp. App. 2-5,8-10,13-14.
The investigating prosecutor brought Rita before the grand jury, placed him under oath, and asked him about these matters. Rita denied that the Government agent had asked him for the PPSH kit, and also denied that he had spoken soon thereafter about the PPSH kit to someone at InterOrdnance. App. 19, 120-121; Supp. App. 11-12. The Government claimed these statements were false, charged Rita with perjury, making false statements, and obstructing justice, and, after a jury trial, obtained convictions on all counts. App. 7-13, 94, 103.
B
The parties subsequently proceeded to sentencing. Initially, a probation officer, with the help of the parties, and after investigating the background both of the offenses and of the offender, prepared a presentence report. See Fed. Rules Crim. Proc. 32(c)-(d); 18 U. S. C. § 3552(a). The completed report describes “offense characteristics,” “offender characteristics,” and other matters that might be relevant to the sentence, and then calculates a Guidelines sentence. The report also sets forth factors potentially relevant to a departure from the Guidelines or relevant to the imposition of an other-than-Guidelines sentence. It ultimately makes a sentencing recommendation based on the Guidelines. App. 115-136.
In respect to “offense characteristics,” for example, the report points out that the five counts of conviction all stem from a single incident. Id., at 122. Hence, pursuant to the Guidelines, the report, in calculating a recommended sentence, groups the five counts of conviction together, treating them as if they amounted to the single most serious count among them (and ignoring all others). See USSG § 3B1.1. The single most serious offense in Rita's case is “perjury.” *343 The relevant Guideline, §2J1.3(c)(l), instructs the sentencing court (and the probation officer) to calculate the Guidelines sentence for “perjury ... in respect to a criminal offense” by applying the Guideline for an “accessory after the fact,” as to that criminal offense, §2X3.1. And that latter Guideline says that the judge, for calculation purposes, should take as a base offense level, a level that is “6 levels lower than the offense level for the underlying offense” (emphasis added) (the offense that the perjury may have helped someone commit). Here the “underlying offense” consisted of InterOrdnance’s possible violation of the machinegun registration law. App. 124; USSG §2M5.2 (providing sentence for violation of 22 U. S. C. § 2778(b)(2), importation of defense articles without authorization). The base offense level for the gun registration crime is 26. See USSG §2M5.2. Six levels less is 20. And 20, says the presentence report, is the base offense level applicable to Rita for purposes of Guidelines sentence calculation. App. 45.
The presentence report next considers Rita’s “Criminal History.” Id., at 125. Rita was convicted in May 1986, and sentenced to five years’ probation for making false statements in connection with the purchase of firearms. Because this conviction took place more than 10 years before the present offense, it did not count against Rita. And because Rita had no other relevant convictions, the Guidelines considered him as having no “criminal history points.” Ibid. The report consequently places Rita in criminal history category I, the lowest category for purposes of calculating a Guidelines’ sentence.
The report goes on to describe other “Offender Characteristics.” Id., at 126. The description includes Rita’s personal and family data, Rita’s physical condition (including a detailed description of ailments), Rita’s mental and emotional health, the lack of any history of substance abuse, Rita’s vocational and nonvocational education, and Rita’s employment record. It states that he served in the Armed Forces for *344 over 25 years, on active duty and in the Reserve. During that time he received 35 commendations, awards, or medals of different kinds. The report analyzes Rita’s financial condition. Id., at 126-132.
Ultimately, the report calculates the Guidelines sentencing range. Id., at 132. The Guidelines specify for base level 20, criminal history category I, a sentence of 33-to-41 months’ imprisonment. Ibid. The report adds that there “appears to be no circumstance or combination of circumstances that warrant a departure from the prescribed sentencing guidelines.” Id., at 133.
C
At the sentencing hearing, both Rita and the Government presented their sentencing arguments. Each side addressed the report. Rita argued for a sentence outside (and lower than) the recommended Guidelines 33-to-41 month range.
The judge made clear that Rita's argument for a lower sentence could take either of two forms. First, Rita might argue within the Guidelines’ framework, for a departure from the applicable Guidelines range on the ground that his circumstances present an “atypical case” that falls outside the “heartland” to which the United States Sentencing Commission intends each individual Guideline to apply. USSG § 5K2.0(a)(2). Second, Rita might argue that, independent of the Guidelines, application of the sentencing factors set forth in 18 U. S. C. § 3553(a) (2000 ed. and Supp. IV) warrants a lower sentence. See Booker, 543 U. S., at 259-260.
Thus, the judge asked Rita’s counsel, “Are you going to put on evidence to show that [Rita] should be getting a downward departure, or under 3553, your client would be entitled to a different sentence than he should get under sentencing guidelines?” App. 52. And the judge later summarized:
“[Y]ou’re asking for a departure from the guidelines or a sentence under 3553 that is lower than the guidelines, and here are the reasons:
*345 “One, he is a vulnerable defendant because he’s been involved in [government criminal justice] work which has caused people to become convicted criminals who are in prison and there may be retribution against him.
“Two, his military experience ....” Id., at 64-65.
Counsel agreed, while adding that Rita’s poor physical condition constituted a third reason. And counsel said that he rested his claim for a lower sentence on “[j]ust [those] three” special circumstances, “[p]hysical condition, vulnerability in prison and the military service.” Id., at 65. Rita presented evidence and argument related to these three factors. The Government, while not asking for a sentence higher than the report’s recommended Guidelines range, said that Rita’s perjury had interfered with the Government’s potential “obstruction of justice” claim against InterOrdnance and that Rita, as a former Government criminal justice employee, should have known better than to commit perjury. Id., at 74-77. The sentencing judge asked questions about each factor.
After hearing the arguments, the judge concluded that he was “unable to find that the [report’s recommended] sentencing guideline range ... is an inappropriate guideline range for that, and under 3553 ... the public needs to be protected if it is true, and I must accept as true the jury verdict.” Id., at 87. The court concluded: “So the Court finds that it is appropriate to enter” a sentence at the bottom of the Guidelines range, namely, a sentence of imprisonment “for a period of 33 months.” Ibid.
D
On appeal, Rita argued that his 33-month sentence was “unreasonable” because (1) it did not adequately take account of “the defendant’s history and characteristics,” and (2) it “is greater than necessary to comply with the purposes of sentencing set forth in 18 U. S. C. § 3553(a)(2).” Brief for Appellant in No. 05-4674 (CA4), pp. i, 8. The Fourth Circuit *346 observed that it must set aside a sentence that is not “reasonable.” The Circuit stated that “a sentence imposed within the properly calculated Guidelines range ... is presumptively reasonable.” 177 Fed. Appx., at 358 (internal quotation marks and citations omitted). It added that “while we believe that the appropriate circumstances for imposing a sentence outside the guideline range will depend on the facts of individual cases, we have no reason to doubt that most sentences will continue to fall within the applicable guideline range.” The Fourth Circuit then rejected Rita’s arguments and upheld the sentence. Ibid, (internal quotation marks omitted).
E
Rita petitioned for a writ of certiorari. He pointed out that the Circuits are split as to the use of a presumption of reasonableness for within-Guidelines sentences. Compare United States v. Dorcely, 454 F. 3d 366, 376 (CADC 2006) (uses presumption); United States v. Green, 436 F. 3d 449, 457 (CA4 2006) (same); United States v. Alonzo, 435 F. 3d 551, 554 (CA5 2006) (same); United States v. Williams, 436 F. 3d 706, 708 (CA6 2006) (same); United States v. Mykytiuk, 415 F. 3d 606, 608 (CA7 2005) (same); United States v. Lincoln, 413 F. 3d 716, 717 (CA8 2005) (same); and United States v. Kristl, 437 F. 3d 1050, 1053-1054 (CA10 2006) (per curiam) (same), with United States v. Jimenez-Beltre, 440 F. 3d 514, 518 (CA1 2006) (en banc) (does not use presumption); United States v. Fernandez, 443 F. 3d 19, 27 (CA2 2006) (same); United States v. Cooper, 437 F. 3d 324, 331 (CA3 2006) (same); and United States v. Talley, 431 F. 3d 784, 788 (CA11 2005) (per curiam) (same).
We consequently granted Rita’s petition. We agreed to decide whether a court of appeals may afford a “presumption of reasonableness” to a “within-Guidelines” sentence. We also agreed to decide whether the District Court properly analyzed the relevant sentencing factors and whether, given *347 the record, the District Court’s ultimate choice of a 33-month sentence was “unreasonable.”
II
The first question is whether a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines. We conclude that it can.
A
For one thing, the presumption is not binding. It does not, like a trial-related evidentiary presumption, insist that one side, or the other, shoulder a particular burden of persuasion or proof lest they lose their case. Cf., e. g., Raytheon Co. v. Hernandez, 540 U. S. 44, 49-50, n. 3 (2003) (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U. S. 133, 143 (2000), and McDonnell Douglas Corp. v. Green, 411 U. S. 792, 802 (1973)). Nor does the presumption reflect strong judicial deference of the kind that leads appeals courts to grant greater factfinding leeway to an expert agency than to a district judge. Rather, the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one.
Further, the presumption reflects the nature of the Guidelines-writing task that Congress set for the Commission and the manner in which the Commission carried out that task. In instructing both the sentencing judge and the Commission what to do, Congress referred to the basic sentencing objectives that the statute sets forth in 18 U. S. C. § 3553(a) (2000 ed. and Supp. IV). That provision tells the sentencing judge to consider (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims *348 of sentencing, namely, (a) “just punishment” (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. The provision also tells the sentencing judge to “impose a sentence sufficient, but not greater than necessary, to comply with” the basic aims of sentencing as set out above.
Congressional statutes then tell the Commission to write Guidelines that will carry out these same § 3553(a) objectives. Thus, 28 U. S. C. § 991(b) indicates that one of the Commission’s basic objectives is to “assure the meeting of the purposes of sentencing as set forth in [§ 3553(a)(2)].” The provision adds that the Commission must seek to “provide certainty and fairness” in sentencing, to “avoi[d] unwarranted sentencing disparities,” to “maintai[n] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices,” and to “reflect, to the extent practicable, [sentencing-relevant] advancement in [the] knowledge of human behavior.” Later provisions specifically instruct the Commission to write the Guidelines with reference to this statement of purposes, the statement that itself refers to § 3553(a). See 28 U. S. C. §§ 994(f), 994(m).
The upshot is that the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale.
The Commission has made a serious, sometimes controversial, effort to carry out this mandate. The Commission, in describing its Guidelines-writing efforts, refers to these same statutory provisions. It says that it has tried to embody in the Guidelines the factors and considerations set forth in § 3553(a). The Commission’s introductory statement recognizes that Congress “foresees guidelines that will *349 further the basic purposes of criminal punishment, i. e., deterring crime, incapacitating the offender, providing just punishment, and rehabilitating the offender.” USSG § 1A1.1, intro, to comment., pt. A, ¶2 (The Statutory Mission). It adds that Congress “sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct,” as well as “proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity.” Id., ¶ 3, at 2 (The Basic Approach).
The Guidelines commentary explains how, despite considerable disagreement within the criminal justice community, the Commission has gone about writing Guidelines that it intends to embody these ends. It says, for example, that the goals of uniformity and proportionality often conflict. The commentary describes the difficulties involved in developing a practical sentencing system that sensibly reconciles the two ends. It adds that a “philosophical problem arose when the Commission attempted to reconcile the differing perceptions of the purposes of criminal punishment.” Some would emphasize moral culpability and “just punishment”; others would emphasize the need for “crime control.” Rather than choose among differing practical and philosophical objectives, the Commission took an “empirical approach,” beginning with an empirical examination of 10,000 presentence reports setting forth what judges had done in the past and then modifying and adjusting past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like. Id., ¶ 3, at 3.
The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill this statutory mandate. They also reflect the fact that different judges (and others) can differ as to how best to reconcile the disparate ends of punishment.
*350 The Commission’s work is ongoing. The statutes and the Guidelines themselves foresee continuous evolution helped by the sentencing courts and courts of appeals in that process. The sentencing courts, applying the Guidelines in individual cases, may depart (either pursuant to the Guidelines or, since Booker, by imposing a non-Guidelines sentence). The judges will set forth their reasons. The courts of appeals will determine the reasonableness of the resulting sentence. The Commission will collect and examine the results. In doing so, it may obtain advice from prosecutors, defenders, law enforcement groups, civil liberties associations, experts in penology, and others. And it can revise the Guidelines accordingly. See generally 28 U. S. C. § 994(p) and note following § 994 (Commission should review and amend Guidelines as necessary, and Congress has power to revoke or amend Guidelines); Mistretta v. United States, 488 U. S. 361, 393-394 (1989); USSG §1B1.10(c) (listing 24 amendments promulgated in response to evolving sentencing concerns); USSG § 1A1.1, comment.
The result is a set of Guidelines that seek to embody the § 3553(a) considerations, both in principle and in practice. Given the difficulties of doing so, the abstract and potentially conflicting nature of § 3553(a)’s general sentencing objectives, and the differences of philosophical view among those who work within the criminal justice community as to how best to apply general sentencing objectives, it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve §3553(a)’s objectives.
An individual judge who imposes a sentence within the range recommended by the Guidelines thus makes a decision that is fully consistent with the Commission’s judgment in general. Despite Justice Souter’s fears to the contrary, post, at 390-392 (dissenting opinion), the courts of appeals’ “reasonableness” presumption, rather than having independent legal effect, simply recognizes the real-world circum *351 stance that when the judge’s discretionary decision accords with the Commission’s view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable. Indeed, even the Circuits that have declined to adopt a formal presumption also recognize that a Guidelines sentence will usually be reasonable, because it reflects both the Commission’s and the sentencing court’s judgment as to what is an appropriate sentence for a given offender. See Fernandez, 443 F. 3d, at 27; Cooper, 437 F. 3d, at 331; Talley, 431 F. 3d, at 788.
We repeat that the presumption before us is an appellate court presumption. Given our explanation in Booker that appellate “reasonableness” review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review. The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. 18 U. S. C. § 3552(a); Fed. Rule Crim. Proc. 32. He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the “heartland” to which the Commission intends individual Guidelines to apply, USSG §5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless, see Rule 32(f). Thus, the sentencing court subjects the defendant’s sentence to the thorough adversarial testing contemplated by federal sentencing procedure. See Rules 32(f), (h), (i)(1)(C), and (i)(1)(D); see also Burns v. United States, 501 U. S. 129, 136 (1991) (recognizing importance of notice and meaningful opportunity to be heard at sentencing). In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. Booker, 543 U. S., at 259-260.
*352 B
Rita and his supporting amici make two further arguments against use of the presumption. First, Rita points out that many individual Guidelines apply higher sentences in the presence of special facts, for example, brandishing a weapon. In many cases, the sentencing judge, not the jury, will determine the existence of those facts. A pro-Guidelines “presumption of reasonableness” will increase the likelihood that courts of appeals will affirm such sentences, thereby increasing the likelihood that sentencing judges will impose such sentences. For that reason, Rita says, the presumption raises Sixth Amendment “concerns.” Brief for Petitioner 28.
In our view, however, the presumption, even if it increases the likelihood that the judge, not the jury, will find “sentencing facts,” does not violate the Sixth Amendment. This Court’s Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence. Nor do they prohibit the sentencing judge from taking account of the Sentencing Commission’s factual findings or recommended sentences. See Cunningham v. California, 549 U. S. 270, 281-282 (2007) (citing Booker, supra, at 243-244; Blakely v. Washington, 542 U. S. 296, 304-305 (2004); Ring v. Arizona, 536 U. S. 584, 602 (2002); and Apprendi v. New Jersey, 530 U. S. 466, 471 (2000)).
The Sixth Amendment question, the Court has said, is whether the law forbids a judge to increase a defendant’s sentence unless the judge finds facts that the jury did not find (and the offender did not concede). Blakely, supra, at 303-304 (“When a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment and the judge exceeds his proper authority” (internal quotation marks and citation omitted)); see Cunningham, supra, at 283-284 (discussing Blakely) (“The judge could not have sen *353 tenced Blakely above the standard range without finding the additional fact of deliberate cruelty,” “[b]ecause the judge in Blakely’s case could not have imposed a sentence outside the standard range without finding an additional fact, the top of that range... was the relevant” maximum sentence for Sixth Amendment purposes); Booker, 543 U. S., at 244 (“Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt”); id., at 232 (discussing Blakely) (“We rejected the State’s argument that the jury verdict was sufficient to authorize a sentence within the general 10-year sentence for class B felonies, noting that under Washington law, the judge was required to find additional facts in order to impose the greater 90-month sentence” (emphasis in original)).
A nonbinding appellate presumption that a Guidelines sentence is reasonable does not require the sentencing judge to impose that sentence. Still less does it prohibit the sentencing judge from imposing a sentence higher than the Guidelines provide for the jury-determined facts standing alone. As far as the law is concerned, the judge could disregard the Guidelines and apply the same sentence (higher than the statutory minimum or the bottom of the unenhanced Guidelines range) in the absence of the special facts (say, gun brandishing) which, in the view of the Sentencing Commission, would warrant a higher sentence within the statutorily permissible range. Thus, our Sixth Amendment cases do not forbid appellate court use of the presumption.
Justice Scalia concedes that the Sixth Amendment concerns he foresees are not presented by this case. Post, at 373-374 (opinion concurring in part and concurring in judgment). And his need to rely on hypotheticals to make his point is consistent with our view that the approach adopted here will not “raise a multitude of constitutional problems.” *354 Clark v. Martinez, 543 U. S. 371, 380-381 (2005). Similarly, Justice Scalia agrees that we have never held that “the Sixth Amendment prohibits judges from ever finding any facts” relevant to sentencing. Post, at 373. In sentencing, as in other areas, district judges at times make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur. Our decision in Booker recognized as much, 543 U. S., at 260-264. Booker held unconstitutional that portion of the Guidelines that made them mandatory. Id., at 233-234, 243-244. It also recognized that when district courts impose discretionary sentences, which are reviewed under normal appellate principles by courts of appeals, such a sentencing scheme will ordinarily raise no Sixth Amendment concern. Ibid.; see id., at 233 (opinion for the Court by Stevens, J.) (“Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [federal sentencing statute] the provisions that make the Guidelines binding on district judges”). That being so, our opinion in Booker made clear that today’s holding does not violate the Sixth Amendment.
Rita may be correct that the presumption will encourage sentencing judges to impose Guidelines sentences. But we do not see how that fact could change the constitutional calculus. Congress sought to diminish unwarranted sentencing disparity. It sought a Guidelines system that would bring about greater fairness in sentencing through increased uniformity. The fact that the presumption might help achieve these congressional goals does not provide cause for holding the presumption unlawful as long as the presumption remains constitutional. And, given our case law, we cannot conclude that the presumption itself violates the Sixth Amendment.
The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may *355 adopt a presumption of unreasonableness. Even the Government concedes that appellate courts may not presume that every variance from the advisory Guidelines is unreasonable. See Brief for United States 34-35. Several courts of appeals have also rejected a presumption of unreasonableness. See, e. g., United States v. Howard, 454 F. 3d 700, 703 (CA7 2006); United States v. Matheny, 450 F. 3d 633, 642 (CA6 2006); United States v. Myers, 439 F. 3d 415, 417 (CA8 2006); United States v. Moreland, 437 F. 3d 424, 433 (CA4 2006). However, a number of Circuits adhere to the proposition that the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance. See, e. g., United States v. Smith, 445 F. 3d 1, 4 (CA1 2006); Moreland, supra, at 434; United States v. Armendariz, 451 F. 3d 352, 358 (CA5 2006); United States v. Davis, 458 F. 3d 491, 496 (CA6 2006); United States v. Dean, 414 F. 3d 725, 729 (CA7 2005); United States v. Dalton, 404 F. 3d 1029, 1033 (CA8 2005); United States v. Bishop, 469 F. 3d 896, 907 (CA10 2006); United States v. Crisp, 454 F. 3d 1285, 1291-1292 (CA11 2006). We will consider that approach next Term in Gall v. United States, No. 06-7949, cert. granted, post, p. 1113.
Second, Rita and his amici claim that use of a pro-Guidelines presumption on appeal conflicts with Congress’ insistence that sentencing judges apply the factors set forth in 18 U. S. C. § 3553(a) (2000 ed., Supp. IV) (and that the resulting sentence be “sufficient, but not greater than necessary, to comply with the purposes” of sentencing set forth in that statute). We have explained above, however, why we believe that, where judge and Commission both determine that the Guidelines sentence is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its “not greater than necessary” requirement). See supra, at 348. This circumstance alleviates any serious general conflict between § 3553(a) and the Guidelines, for the purposes of appellate review. And, for that reason, *356 we find that nothing in § 3553(a) renders use of the presumption unlawful.
Ill
We next turn to the question whether the District Court properly analyzed the relevant sentencing factors. In particular, Rita argues that the court took inadequate account of § 3553(c) (2000 ed., Supp. IV), a provision that requires a sentencing judge, “at the time of sentencing,” to “state in open court the reasons for its imposition of the particular sentence.” In our view, given the straightforward, conceptually simple arguments before the judge, the judge’s statement of reasons here, though brief, was legally sufficient.
The statute does call for the judge to “state” his “reasons.” And that requirement reflects sound judicial practice. Judicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public’s trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust.
That said, we cannot read the statute (or our precedent) as insisting upon a full opinion in every case. The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word “granted” or “denied” on the face of a motion while relying upon context and the parties’ prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge’s own professional judgment.
In the present context, a statement of reasons is important. The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties’ arguments and has a reasoned basis for exercising his own legal decisionmaking authority. See, e. g., United States v. Taylor, 487 U. S. 326, 336-337 (1988). Nonetheless, when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explana *357 tion. Circumstances may well make clear that the judge rests his decision upon the Commission’s own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence generally under § 3553(a) — that is, argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way — or argues for departure, the judge normally need say no more. Cf. § 3553(c)(2) (2000 ed., Supp. IV). (Although, often at sentencing a judge will speak at length to a defendant, and this practice may indeed serve a salutary purpose.)
Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments. Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation. Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so. To our knowledge, an ordinary explanation of judicial reasons as to why the judge has, or has not, applied the Guidelines triggers no Sixth Amendment “jury trial” requirement. Cf. Booker, 543 U. S., at 233 (“For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant”), and id., at 242 (requirement of finding, not articulation of it, creates Sixth Amendment problem).
By articulating reasons, even if brief, the sentencing judge not only assures reviewing courts (and the public) that the sentencing process is a reasoned process but also helps that process evolve. The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals *358 court. That being so, his reasoned sentencing judgment, resting upon an effort to filter the Guidelines’ general advice through §3553(a)’s list of factors, can provide relevant information to both the court of appeals and ultimately the Sentencing Commission. The reasoned responses of these latter institutions to the sentencing judge’s explanation should help the Guidelines constructively evolve over time, as both Congress and the Commission foresaw. See generally supra, at 351.
In the present case the sentencing judge’s statement of reasons was brief but legally sufficient. Rita argued for a downward departure from the 33-to-41 month Guidelines sentence on the basis of three sets of special circumstances: health, fear of retaliation in prison, and military record. See App. 40-47. He added that, in any event, these same circumstances warrant leniency beyond that contemplated by the Guidelines.
The record makes clear that the sentencing judge listened to each argument. The judge considered the supporting evidence. The judge was fully aware of defendant’s various physical ailments and imposed a sentence that takes them into account. The judge understood that Rita had previously worked in the immigration service where he had been involved in detecting criminal offenses. And he considered Rita’s lengthy military service, including over 25 years of service, both on active duty and in the Reserve, and Rita’s receipt of 35 medals, awards, and nominations.
The judge then simply found these circumstances insufficient to warrant a sentence lower than the Guidelines range of 33 to 45 months. Id., at 87. He said that this range was mot “inappropriate.” (This, of course, is not the legal standard for imposition of sentence, but taken in context it is plain that the judge so understood.) He immediately added that he found that the 33-month sentence at the bottom of the Guidelines range was “appropriate.” Ibid. He must have believed that there was not much more to say.
*359 We acknowledge that the judge might have said more. He might have added explicitly that he had heard and considered the evidence and argument; that (as no one before him denied) he thought the Commission in the Guidelines had determined a sentence that was proper in the mine run of roughly similar perjury cases; and that he found that Rita’s personal circumstances here were simply not different enough to warrant a different sentence. But context and the record make clear that this, or similar, reasoning underlies the judge’s conclusion. Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.
IV
We turn to the final question: Was the Court of Appeals, after applying its presumption, legally correct in holding that Rita’s sentence (a sentence that applied, and did not depart from, the relevant Sentencing Guideline) was not “unreasonable”? In our view, the Court of Appeals’ conclusion was lawful.
As we previously said, see Part I, supra, the crimes at issue are perjury and obstruction of justice. In essence those offenses involved the making of knowingly false, material statements under oath before a grand jury, thereby impeding its criminal investigation. The Guidelines provide for a typical such offense a base offense ievel of 20, 6 levels below the level provided for a simple violation of the crime being investigated (here, the unlawful importation of machineguns). The offender, Rita, has no countable prior offenses and consequently falls within criminal history category I. The intersection of base offense level 20 and criminal history category I sets forth a sentencing range of imprisonment of 33 to 41 months.
Rita argued at sentencing that his circumstances are special. He based this argument upon his health, his fear of *360 retaliation, and his prior military record. His sentence explicitly takes health into account by seeking assurance that the Bureau of Prisons will provide appropriate treatment. The record makes out no special fear of retaliation, asserting only that the threat is one that any former law enforcement official might suffer. Similarly, though Rita has a lengthy and distinguished military record, he did not claim at sentencing that military service should ordinarily lead to a sentence more lenient than the sentence the Guidelines impose. Like the District Court and the Court of Appeals, we simply cannot say that Rita’s special circumstances are special enough that, in light of § 3553(a), they require a sentence lower than the sentence the Guidelines provide.
Finally, Rita and supporting amici here claim that the Guidelines sentence is not reasonable under § 3553(a) because it expressly declines to consider various personal characteristics of the defendant, such as physical condition, employment record, and military service, under the view that these factors are “not ordinarily relevant.” USSG §§5H1.4, 5H1.5, 5H1.11. Rita did not make this argument below, and we shall not consider it.
* * *
For the foregoing reasons, the judgment of the Court of Appeals is

Affirmed.