**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4819

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES BRAGG NEWMAN,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville.  Norman K. Moon, District Judge.  (3:04-cr-00094-nkm)

Submitted:  January 29, 2008          Decided:  September 4, 2008

Before MOTZ and DUNCAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Melvin L. Hill, WARE & HILL, L.L.P., Roanoke, Virginia, for Appellant.  John L. Brownlee, United States Attorney, Jean B. Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

James Bragg Newman appeals his conviction and sentence following his guilty plea to one count of transportation of stolen money taken by fraud, in violation of 18 U.S.C. § 2314 (2000). He claims his sentence was unreasonable, asserting error in the district court's calculation of loss, in its increase of his base offense level by two levels based on an offense involving ten or more victims pursuant to U.S. Sentencing Guidelines Manual (USSG) § 2B1.1(b)(2)(A) (2004), in its alleged sixteen-level upward adjustment for loss exceeding $1,000,000 pursuant to USSG § 2B1.1(b)(1)(H), and in failing to grant his request for a downward departure.[1]

The charge arose from, and the evidence established, a scheme by which Newman created a company operating as Basic Strategies Corporation located in Charlottesville, Virginia, held himself out as a licensed investment broker with Fidelity Investments, with which he was neither a licensed broker nor a representative, and made false representations to potential and actual investors in order to obtain their trust and their money. Among other things, Newman failed to reveal to his customers that he previously had been convicted of fraud. At Newman's direction,

---

[1]The district court placed Newman in a total offense level of twenty-two, and a criminal history category of IV, with an attendant sentencing range of sixty-three to seventy-eight months' imprisonment.

clients opened new accounts with Fidelity Investments and Merrill Lynch.  Newman provided his victims with financial advice on stock purchases and, in some cases, was given authority to make trading decisions and to manipulate transactions without conferring with the customer.  Newman directed several clients to fund Self-Employed Individual Retirement Accounts, or "SEP IRAs," and then failed to open many of these accounts, taking the money intended for the SEP IRA for his personal use.  In some instances, Newman perpetrated his scheme by providing victims with fraudulent statements detailing how the money in the SEP IRA and other accounts purportedly had been invested.

The probation officer placed Newman at a base offense level of six, pursuant to USSG § 2B1.1(a)(2), and then added sixteen levels for a loss exceeding $1,000,000, pursuant to USSG § 2B1.1(b)(1)(H); an additional two levels for abuse of trust because Newman claimed to be a licensed financial investor or broker, pursuant to USSG § 3B1.3; and an additional two levels because the offense involved more than ten victims, pursuant to USSG § 2B1.1(b)(2)(A), for a total offense level of twenty-six.[2] With a criminal history category of IV, the probation officer calculated Newman's advisory guidelines range to be 92 to 115 months' imprisonment.  Newman filed objections to the presentence

---

[2]The PSR identified eighteen victims, with a corresponding total loss of $1,242,219.

report ("PSR"), which objections included a challenge to the PSR's calculation of loss and the number of victims. Following a full evidentiary hearing, the district court ultimately sentenced Newman under the advisory federal sentencing guidelines to seventy-eight months' imprisonment, three years of supervised release, and ordered payment of restitution of $148,749.16, representing total losses incurred by fifteen victims.[3][4]

With regard to the calculation of loss issue, Newman alleges on appeal that he should only have been held responsible for $61,500 in losses, and that the court should have found only six victims, such that the two-point enhancement for more than ten victims was wrongly applied.[5] Newman further asserts error in the alleged sixteen-level adjustment for losses exceeding $1,000,000.

[3]Specifically, the district court determined that Newman was responsible for an actual total loss of $186,992.16, for losses sustained by fifteen victims, and ordered restitution to be paid to twelve of those victims in the total amount of $148,749.16.

[4]The district court also found that Newman's testimony was not credible and that he had not accepted responsibility, stating that Newman had obstructed justice in "so many ways that are hard to enumerate" but specifically with regard to the information he supplied to his counsel and the court regarding certain transactions with specific victims.

[5]Newman does not contest the district court's loss determination as to the following victims and loss amounts: (1) David Artigues, in the amount of $10,000; (2) Edmond Hoskins, in the amount of $5000; (3) Marietta McCarty, in the amount of $7000; (4) Robert Stumm, in the amount of $13,000; and (5) Keith Stumm, in the amount of $6500. He also agrees that he absconded with $20,000 from Hannah Watters, but disagrees with the $40,000 amount determined by the district court to be the actual loss sustained by Watters.

This court reviews the determination of the amount of loss, to the extent it is a factual matter, for clear error, and reviews de novo the district court's legal interpretation of the term "loss" under the Sentencing Guidelines. United States v. West, 2 F.3d 66, 71 (4th Cir. 1993). Here, the district court heard and considered oral and documentary evidence, as well as arguments from both parties, during a two-day sentencing hearing regarding the various sentencing issues, including the calculation of loss.

While Newman takes issue with the amount of loss determined by the district court, the record clearly reflects that the district court's loss determination followed a lengthy sentencing hearing and was made after review of documentary and testimonial evidence, and an extended and detailed analysis of the transactions each victim had with Newman. The court's careful consideration and determination as to which losses properly were attributable to Newman's fraudulent activity, and its findings in distinguishing such properly attributable losses from losses sustained by other causes not properly includable including stock market instability,[6] fully support our conclusion that there is no clear error with regard to the district court's loss calculation.

---

[6]The court's restitution order also reflects that it subtracted out the amounts that, as to some victims, already had been returned or recovered by each victim, as well as amounts that reasonably were incurred for legitimate services rendered.

Secondly, Newman challenges the district court's finding that the number of victims was ten or more, thus triggering a two-level enhancement under USSG § 2B1.1(b)(2)(A). We find this claim to be without merit, given the district court's fact-finding at sentencing, which was based on the government's ample evidence demonstrating that more than ten victims were affected by Newman's fraudulent activities. The enhancement was reasonable and appropriate.

Nor do we find merit to Newman's challenge to the application of the sixteen-level upward adjustment for losses exceeding $1,000,000 pursuant to USSG § 2B1.1(b)(1)(H), that was recommended in the PSR. The record clearly reflects that the district court did not apply the recommended adjustment, finding instead the total loss amount for which Newman should be held responsible for purposes of calculating his advisory guidelines range to be $186,992.16.

Finally, Newman asserts error in the district court's failure to grant him a downward departure. Specifically, he claims he should have benefitted from a departure because of family circumstances, because he suffers from Type II diabetes, and because he had been involved in charitable causes.

We review a post-Booker sentence for reasonableness. This court affords sentences that fall within the properly calculated guidelines range a presumption of reasonableness, a

6

presumption permitted by the Supreme Court.  Rita v. United States, 551 U.S. ____, 127 S. Ct. 2456, 2462 (2007).  Where the district court is aware of its authority to depart under a specific guidelines provision, but exercises its discretion not to depart, this court lacks jurisdiction to review that portion of the sentencing decision.  See United States v. Wood, 378 F.3d 342, 351 n.8 (4th Cir. 2004); United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir. 1990).

In this case, the district court was aware of its authority to depart, but chose not to do so.  A review of the sentencing transcript reveals that the district court considered the information in the PSR, the evidence presented by Newman and his arguments relating to his physical condition and family situation, as well as his educational level and charitable activities.[7]  After considering the statutory factors under § 3553(a), the facts, arguments, and evidence presented to it, as well as the applicable advisory guidelines range, the district court deemed a within-guideline sentence to be appropriate.  We find Newman has not overcome the presumption of reasonableness that this court accords such a sentence.  Rita, 551 U.S. at ___, 127 S. Ct. at 2462.

---

[7]The district court granted leave to Newman's counsel to proffer or summarize information relative to Newman's charitable work.

Accordingly, we affirm Newman's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED