[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 29, 2010
JOHN LEY
CLERK

No. 09-13617
Non-Argument Calendar
_____

D. C. Docket No. 09-20053-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS ESCOTO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 29, 2010)

Before EDMONDSON, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Jesus Escoto appeals his sentence of 47 months of imprisonment for

conspiracy to commit health care fraud, 18 U.S.C. § 1349, and three counts of health care fraud, id. § 1347. Escoto argues that his sentence is unreasonable. We affirm.

Agents of the Federal Bureau of Investigation discovered that Lester Miranda had established businesses with nominee owners that had submitted fraudulent medical claims to Medicare and had funneled payments received for those false claims to Miranda and members of his conspiracy. As part of this scheme, Miranda paid Escoto to serve as the nominee owner of Chaca Medical Services, Inc. Between March 2004 and June 2004, Escoto submitted on behalf of Chaca Medical false claims to Medicare of $9,536,027, and Medicare paid Chaca Medical $3,209,750, which Escoto distributed to himself, Miranda, and other members of the conspiracy.

Escoto was indicted for conspiracy and three counts of health care fraud, and he later entered blind pleas of guilt to the four crimes. Id. §§ 1347, 1349. Escoto's presentence investigation report listed an adjusted offense level of 25, and with a criminal history category of I, the report provided a sentencing range between 57 and 71 months of imprisonment. The report stated that in 1998 Escoto had been arrested and charged for being an immigrant without a visa and for fraud but the "circumstances for [the] arrest" and disposition of the charges were unknown.

Escoto objected to the report and he moved for a downward variance based on his work history, his fiscal obligations to his children, mother, and adult sister, and his lack of a criminal history. Escoto argued that he was a nominee owner and served a minimal role in the conspiracy. Escoto did not request a specific term of imprisonment, but he stated that comparable coconspirators "were punished appropriately" when they received sentences between 59 and 168 months of imprisonment.

The district court sentenced Escoto to 47 months of imprisonment and 3 months of supervised release. The district court explained that ordinarily it "imposes within the guidelines for Medicare fraud," but "in applying the 3553 factors," the district court found that Escoto's role as a nominee owner and otherwise lawful conduct made a "variance in this particular case . . . appropriate." The district court stated that "a 47-month sentence . . . [was] sufficient to achieve the need for respect for the law, deterrence, protect the community, and also take into consideration avoidance of disparity . . . with other individuals within this particular group . . . ." The district court acknowledged that there was "one person who did receive a [reduction for a] minor role and was a nominee owner," but the court determined that Escoto was not entitled to a minor role reduction "because of the amount of money involved."

3

The district court did not abuse its discretion by imposing a sentence below the advisory guideline range. The district court considered the sentencing factors and reasonably determined that a 10-month downward variance would punish Escoto for his crimes, deter him from future similar crimes, protect the public, and avoid an unwarranted sentence disparity with similarly situated codefendants. See 18 U.S.C. § 3553(a); Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007). Escoto argues that the district court erred by considering his arrest for immigration fraud, but the court stated that Escoto's sentence was "appropriate for a . . . man who has not otherwise had any criminal involvement." We will not disturb a sentence unless "'we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (quoting United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008)). Escoto requested and received a downward variance, and his sentence is reasonable.

We **AFFIRM** Escoto's sentence.