[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 13, 2011
JOHN LEY
CLERK

No. 11-11447
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cr-00202-RAL-AEP-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFONSO GALLEGOS-OLIVO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 13, 2011)

Before BARKETT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Alfonso Gallegos-Olivo appeals his 18-month sentence, imposed under 18 U.S.C. § 3583(e) for violation of the conditions of his supervised release. He violated his supervision by reentering the country illegally within two years of his deportation, a crime for which he was also separately prosecuted. Gallegos-Olivo argues that his sentence, which is 6 months higher than his advisory guideline sentence, is substantively unreasonable. After carefully reviewing the record and the parties' briefs, we affirm.

Gallegos-Olivo has the burden of establishing his sentence as unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir 2005). He does not claim any procedural defect in his sentencing, so we proceed to review the sentence for substantive reasonableness, using an abuse of discretion standard. United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008); United States v. Sweeting, 437 F.3d 1105, 1106–07 (11th Cir. 2006). Applying this standard, we consider "the totality of the circumstances, including the extent of any variance from the Guidelines range." United States v. Gall, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). We disturb a sentence only when we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Pugh, 515 F.3d at 1191 (quotation

marks omitted); see 18 U.S.C. § 3583(e).[1]

In a revocation case, the court should state its reasons for finding that a defendant's violation of the conditions of supervised release, and to a limited extent this defendant's offense and history, are "sufficiently compelling" to support a variance. Gall, 552 U.S. at 50, 128 S. Ct. at 597; see U.S.S.G. Ch. 7, Pt. A 3(b), intro. comment. (stating, in a revocation sentencing, the district court "should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.").

According to Gallegos-Olivo,"the breach of trust" inherent in the violation of his condition of supervised release is already taken into account in establishing the guideline range. Id. Given that his breach of trust is intended to be the

---

[1] Under 18 U.S.C. § 3583(e), when courts impose a sentence after revoking supervised release, they consider these § 3553(a) factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment . . .; (4) the kinds of sentence and the sentencing range [set forth in the sentencing guidelines] . . . ; (5) any pertinent policy statement . . . ; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

§ 3553(a)(1), (a)(2)(B)-(D), and (a)(4)-(7).

3

"primar[y]" determinant of his sentence, id., Gallegos-Olivo contends that "the record is devoid of a reason—other than [the district court's] personal opinion about illegal reentry—for imposing" an upward variance. In particular, he notes that "there was no explanation" of why his violation was different "than any other illegal reentry."

Our review of the record leads us to conclude that it contains sufficient explanation by the district court of why a guideline sentence did not adequately address the facts surrounding Gallegos-Olivo's violation. During the sentencing hearing, the district court referred to both general and individual considerations in making its sentencing decision, stating:

> I don't know what we have to do to deter people like Mr. [Gallegos-]Olivo. It's becoming an epidemic. We prosecute them, we send them to Federal prison, they're deported and they brazenly come back into our country. You know, in my view, a sentence within the advisory guideline range is just not reasonable, in my view, a sentence of 18 months is reasonable when I look at all the statutory factors in terms of deterring future criminal conduct, protecting the public, when I look at the nature and circumstances of his new criminal activity, when I look at his history and characteristics and all those statutory factors.

Earlier in the hearing, the district court expressed concern that Gallegos-Olivo was not deterred by the 24-month sentence he received for his original criminal conviction "'cause he comes back." The court also noted a specific aspect of his

4

criminal history—state officials eschewed prosecuting Gallegos-Olivo in state court for threatening his family members with a gun, instead favoring federal prosecution for the lesser offense of possessing a firearm as an illegal alien.

The court's observation of an "epidemic" of illegal reentry did not render its determination substantively unreasonable. Rather, the district court's reference to a broader national phenomenon shed light on why Gallegos-Olivo's particular type of breach of trust—his illegal reentry—contributed to the "seriousness of the underlying violation" in a way not already incorporated into the applicable guideline range. U.S.S.G. Ch. 7, Pt. A 3(b), intro. comment (allowing the court to rely "to a limited degree" on the "seriousness of the underlying violation" in revocation sentencing). A district court judge is certainly permitted to refer to what he has "learned from similar cases over the years," so long as he ties that observation to the individual he is sentencing. Shaw, 560 F.3d at 1238.

The district court also referenced Gallegos-Olivo's criminal history as a basis for the variance, in light of considerations of deterrence and protecting the public. Specifically, the court expressed concern over Gallegos-Olivo's alleged involvement in a more serious offense for which he was never prosecuted. The commentary to the guidelines makes clear that Gallegos-Olivo's criminal history may be considered, though only "to a limited degree." U.S.S.G., Ch. 7, Pt. A 3(b),

5

intro. comment.

The district court's explicit reliance on the § 3553(a) factors, <u>i.e.</u> the seriousness of the underlying offense and Gallegos-Olivo's criminal history, demonstrates that the court has sufficiently "considered [the] parties' arguments and has a reasoned basis" for imposing an upward variance of 6 months. <u>Rita v. United States</u>, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007).

**AFFIRMED.**