FILED
**United States Court of Appeals
Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 1, 2022**

**Christopher M. Wolpert
Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MAITISE CREWS,

    Defendant - Appellant.

No. 21-1440
(D.C. No. 1:07-CR-00280-RBJ-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **HOLMES**, Circuit Judges.
_____

Maitise Crews appeals from the 21-month sentence the district court imposed

after revoking his second term of supervised release.  Exercising jurisdiction under

28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

**BACKGROUND**

In 2007, Mr. Crews pleaded guilty to being a felon in possession of a firearm,

in violation of 18 U.S.C. § 922(g)(1).  The district court sentenced him to 63 months

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of imprisonment, to be served concurrently with a much longer state term, and three years of supervised release.

In September 2019, Mr. Crews began serving his federal supervised-release term.  Nearly a year later, in August 2020, his probation officer petitioned to revoke his supervised release because he had tested positive for drugs a number of times and had failed to comply with drug treatment and monitoring.  Mr. Crews admitted to the violations.  The Guidelines range was 21-24 months' imprisonment, but neither party requested a Guidelines sentence.  The prosecutor considered 12 months and 1 day to be a sufficient sentence, while Mr. Crews requested time served pending the revocation hearing (approximately 60 days).  Both sides agreed that imprisonment should be followed by two more years of supervision.

Defense counsel stated that Mr. Crews was making improvements, but he had been incarcerated for a long time, in harsh conditions, and he was having trouble managing his obligations out of prison.  She asked the court "to give Mr. Crews a second chance, a second chance to learn how to take advantage of all the positives that exist for him right now," stating that he "is deserving of some leniency maybe cloaked in some empathy at this point in time."  R. Vol. 3 at 18.  Mr. Crews told the court that he was "willing to take any kind of rehabilitation that's offered" and that being detained pending the revocation hearing had "opened [his] eyes to not being able to play around with [his] freedom."  *Id.* at 24.  He stated, "I just want some help, some rehabilitation, and I will try and I will do my best."  *Id.*

The district court varied downward and imposed a sentence of 6 months of imprisonment and two years of supervised release. But the decision "came with a warning to Mr. Crews," with the district court telling him:

> [I]t is time for you, sir, to grow up. It is time for you to stop relying on defense lawyers . . . trying to tell judges like me how difficult it is for you to do such simple things as comply with supervised release, and if you are revoked again, the Court will have no interest in continuing supervised release or in varying below the guidelines in terms of incarceration. This is your chance, sir.

R. Vol. 3 at 29.

Mr. Crews completed the 6-month sentence and began serving his second term of supervised release on January 12, 2021. His probation officer reviewed the conditions of supervised release with him on January 13. The next day, however, Mr. Crews failed to provide a urine sample for drug testing. Further, he was living at his wife's house, and she alleged that he assaulted her by grabbing her neck and holding it with both hands.

The probation office placed Mr. Crews in a motel, but that arrangement lasted only two days because he had a verbal disagreement with another resident. He then moved to his mother's house. But his wife called police at least three times over the next two weeks, reporting that he not only made harassing phone calls to her, but also forcibly entered her house and stole her marijuana, repeatedly knocked on her door and refused to leave, and threw rocks through her windows. During this time, he also failed two drug tests. Finally, on January 29, he engaged in a three-hour standoff

3

with police before being arrested.  Mr. Crews pleaded guilty to one count of criminal mischief, and the state dismissed charges of burglary, assault, harassment, and theft.

Mr. Crews' probation officer filed a petition to revoke his second supervised release with four counts supporting revocation.  Count 1 alleged he violated the law, Counts 2 and 3 alleged he failed drug tests, and Count 4 alleged he failed to comply with substance abuse testing as directed.

Mr. Crews' second revocation hearing did not take place until December 14, 2021.  He was in state custody for most of 2021, but he was transferred to federal custody on November 9.  On November 15, a magistrate judge ordered him released on bond with the condition that he reside in a Residential Reentry Center (RRC).  On November 18, two hours after the probation officer met with Mr. Crews and his case manager at the RRC, Mr. Crews attempted to assault and/or threaten an RRC staff member.  The RRC rejected him from the program, and a second magistrate judge revoked Mr. Crews' release on bond.  He remained in federal custody until the second revocation hearing.

At the second revocation hearing, Mr. Crews admitted to all four counts.  As before, the Guidelines range was 21-24 months.  This time, both the probation officer and the prosecutor requested that the court impose a 21-month sentence.  Mr. Crews requested a sentence of time served (315 days) with no further supervision.  His counsel argued that he was in a better position to be successful in the community and that he faced accountability because of state supervision requirements.  She stated, "I understand the Court wants to impose a harsher sentence.  Our request of time

4

served, which is between 10 and 11 months, is a harsher sentence, and . . . I think that the question is maybe a bit more complicated than just looking at the guideline ranges in these circumstances." R. Vol. 3 at 36. In addition, Mr. Crews personally addressed the court, emphasizing his family circumstances and his desire to do better for himself and his family. "I can't do this anymore, Your Honor. I've learned my lesson. It's time for me to stop being my own worst enemy and start being my own best friend by cherishing my freedom and my time." *Id.* at 41.

The district court imposed a 21-month sentence with no further supervision. It rejected defense counsel's suggestion that it wanted to impose a "harsh sentence." *Id.* at 44. In doing so, the court explained: "One of the most unpleasant things about being a judge is sentencing people. . . . And in the case of Mr. Crews, who's been in prison or jail for so much time, really the part of his life when he was young with the whole world in front of him, that makes me sad for him, sad for his family, sad for his community." *Id.* It continued:

> I look, however, at the history here, here, and as I said before, as soon as he got out—I mean, he literally began his second term of supervised release on January 12th, and he got into this scrape with his wife, drunk apparently, breaking into her home, assaulting her three days later. The probation office tried to find him a place, a motel where he could stay. That didn't seem to work out too well. They got him at one point into an RRC, residential reentry center, and he got into it and threatened somebody on the staff and another person over there bragging that he was an OG Crip, and don't mess with me type stuff. You know, it's a guy with lots of ability, lots of talent. Look what his brothers are doing. He said one of them is a sheriff deputy. One of them is an ER surgeon or ER doctor. And for Mr. Crews to be stuck in this vortex of incarceration that started way back with Judge Nottingham in 2007, four years before I ever came to this court, it's a shame.

5

But what I said last time I meant when I said I'm going to give you a break today, sir, but if you violate again I'm not going to vary, I'm not going to give you another break, I'm going to give you what the guideline says you deserve, and I meant that. So my sentence will be 21 months, the bottom of the guideline. No more supervised release. That's not working for him.

*Id.* at 44-45.

Mr. Crews now appeals.

## DISCUSSION

Mr. Crews raises one issue: whether the district court impermissibly decided his sentence in advance when it warned him at the first revocation hearing that it would not vary in the future and then imposed a Guidelines sentence at the second revocation hearing. He acknowledges that he failed to object at the revocation hearing, and therefore our review is for plain error. *See United States v. Moore*, 30 F.4th 1021, 1024 (10th Cir. 2022). "Under plain-error review, a defendant must show: (1) error, (2) that is plain, (3) which affects the party's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1025 (internal quotation marks omitted). "An error is plain if it is clear or obvious under current, well-settled law. In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *United States v. Wells*, 38 F.4th 1246, 2022 WL 2444429, at *4 (10th Cir. 2022) (internal quotation marks omitted).

Relying on *Moore*, Mr. Crews argues that the district court plainly erred by employing a "sentence-in-advance system," *Moore*, 30 F.4th at 1025. In *Moore*, the

6

district court had offered the defendant a choice between a low-end Guidelines sentence of 51 months' imprisonment, or a sentence of 48 months' probation, subject to a sentence of at least 84 months' imprisonment if he violated probation. *See id.* at 1023. When the defendant violated probation, the district court imposed the 84-month sentence based solely on what it said at the earlier hearing, without discussion of the Guidelines range or the facts that led to the probation violation. *See id.* at 1024.

In *Moore*, we held that "the district court plainly erred by imposing its sentence-in-advance system." *Id.* at 1025. "The Supreme Court and this circuit have established a required order of operations in federal sentencings. A district court is supposed to start with the facts, calculate the advisory guideline range, and then decide whether a variance is warranted to ensure a just sentence." *Id.* (internal quotation marks omitted). "Thus, the plain error here lies in preordaining a minimum future sentence and bypassing the required analysis that is available only after probation has been revoked." *Id.* We therefore concluded in *Moore* that "[t]he problem is obvious—the district court couldn't have known whether Mr. Moore's future conduct would justify the at-least-33-month-consecutive increase to its offered 51-month sentence." *Id.*

But the circumstances here differ from *Moore* in important respects. When the defendant violated probation in *Moore*, the district court skipped directly to imposing the previously promised 84-month sentence in lieu of performing the proper analysis. *Id.* at 1024, 1027. Here, however, the probation officer prepared a supervised release

7

violation report discussing the facts and the law, which the district court reviewed. The report included the relevant Guidelines range, which was not disputed. Then Mr. Crews was able to set forth his sentencing position, including letters of support, which the district court also reviewed. His counsel argued at the second revocation hearing, and he had the opportunity to address the court. And importantly, the district court's discussion at the second revocation hearing indicates that it considered relevant factors, specifically including the nature and circumstances of the second supervised release violation and Mr. Crews' history and characteristics, *see* 18 U.S.C. § 3583(e) (identifying sections of 18 U.S.C. § 3553(a) to be considered in revoking supervised release). Thus, unlike *Moore*, the district court here followed the correct procedural steps. *See Gall v. United States*, 552 U.S. 38, 49-50 (2007) (stating that the district court should calculate the Guidelines range, give the parties an opportunity to argue, and then consider the § 3553(a) factors). Rather than skipping directly to the sentence previously discussed, the district court applied its previous warning in light of the facts underlying the second revocation hearing.

Further, in *Moore*, the 84-month sentence greatly exceeded the Guidelines range of 5 to 11 months, and it was not clear how the district court determined that 84 months would be an appropriate sentence. *See* 30 F.4th at 1027. The omission of an explanation was itself a procedural violation. *See Gall*, 552 U.S. at 50 ("After settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."). Here, however, the district court imposed a

8

within-Guidelines sentence, which on appeal we may presume to be reasonable, *see Rita v. United States*, 551 U.S. 338, 347 (2007), and it gave its reasons for doing so. And, as stated, its reasons largely focused on Mr. Crews' conduct during the second supervised release period.

For these reasons, Mr. Crews has not established that the district court committed an error that is clear or obvious. He thus does not satisfy plain-error review.

## CONCLUSION

We grant Mr. Crews' motion to expedite the appeal and affirm the district court's judgment.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge