**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RIGOBERTO BEJAR,

Defendant - Appellant.

No. 07-2188

(D. N.M.)

(D.C. No. CR-06-2372-JB)

### ORDER AND JUDGMENT[*]

Before **O'BRIEN**, **McKAY**, and **GORSUCH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Rigoberto Bejar pled guilty to illegal reentry after deportation subsequent to an aggravated felony conviction. With the benefit of a 10 month downward

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

variance from the bottom of the advisory guideline range, he was sentenced to 60 months imprisonment. He appeals, claiming a greater variance was appropriate and the imposed sentence is thus unreasonable. We affirm.

## I. FACTUAL BACKGROUND

Bejar was born in Mexico. At a young age, he moved with his family to the United States and became a lawful permanent resident. The family resided in California, where Bejar eventually joined a gang. At age 16, he was adjudicated delinquent and placed on probation for Assault by Means of Force Likely to Produce Great Bodily Injury.[1] Approximately three months later, he was sentenced to ten days in juvenile hall for violating his probation by associating with known gang members. At age 17, Bejar and other gang members attempted to tear down a fence at an apartment complex. Bejar was adjudicated delinquent for vandalism and sentenced to a camp community placement program. The sentence was stayed and he was placed on probation. Less than a month later, he violated his probation by associating with known gang members and his suspended camp placement was reinstated. Two months after being released from camp, he was arrested for selling cocaine to an undercover officer.

Bejar's criminal activity continued after reaching the age of majority. In 1995, at age 19, he was convicted of selling cocaine and sentenced to probation.

---

[1] He hit an individual on the back of the head, causing him to fall to the ground, and continued to hit and kick him until a friend stopped him.

-2-

Two years later, Bejar and two other gang members beat and kicked an individual. During the beating, he and his cohorts hit the victim on the head numerous times with a stick and portable radio. The individual died as a result of his injuries. Bejar pled no contest to voluntary manslaughter and was sentenced to 6 years imprisonment. While in prison, he was convicted of battery upon a correctional officer and sentenced to an additional 2 years imprisonment. In late 2004, Bejar was paroled and deported to Mexico, where he lived with his grandparents and worked on their farm.

In June 2005, Bejar's father, a lawful permanent resident of the United States, was involved in a life-threatening accident in Santa Fe, New Mexico. When Bejar learned of the accident, he transported his grandparents to the border where they were issued humanitarian visas to enter the United States. Bejar, on the other hand, re-entered illegally.

On August 23, 2006, Bejar went to a hospital in Santa Fe with a cut to his arm. Hospital staff called the police. After interviewing Bejar, police officers believed the wound was the result of gang violence. The officers then interviewed Bejar's sister, who informed them Bejar had given them a false name. She provided the officers with his true name. With this information, the officers discovered Bejar was unlawfully in the United States.[2]

---

[2] These facts are taken from the PSR's statement of the offense conduct and Bejar did not object to them. However, in his written statement of acceptance of responsibility, Bejar claimed he cut his arm when he fell and landed on a broken

## II.  PROCEDURAL BACKGROUND

Bejar was indicted and pled guilty to illegal re-entry after deportation in violation of 8 U.S.C. § 1326(a), (b).  A Presentence Report (PSR) was prepared. The PSR fixed Bejar's base offense level at 8.  *See* USSG §2L1.2(a).[3]  It added a 16-level enhancement because Bejar had previously been deported after a felony crime of violence conviction (voluntary manslaughter).  *See* USSG §2L1.2(b). After applying a 3-level downward adjustment for acceptance of responsibility under USSG §3E1.1, the total offense level was 21.  With a Criminal History Category of V, the advisory guideline range was 70 to 87 months imprisonment.

Bejar filed a request for a downward variance pursuant to 18 U.S.C. § 3553(a).  He claimed a downward variance to time-served (10 months) was warranted for several reasons.  First, fear of retaliation for leaving his gang. Bejar alleged that while he was in prison in California, his gang ordered him to commit a murder.  Rather than commit a murder, he left the gang and had himself placed in protective custody.  He claims he is under a constant death threat for leaving the gang.  Second, the motivation for his return to the United States.

---

bottle.  He also alleged it was medical personnel, not the police, who suspected his injury was the result of gang violence.  According to Bejar, the police investigated the incident and concluded the injury was not gang-related.  These discrepancies are irrelevant to our resolution of this case.

[3] Bejar was sentenced pursuant to the 2006 edition of the United States Sentencing Commission Guidelines Manual.  All citations to the guidelines herein refer to the 2006 guidelines unless otherwise indicated.

Bejar stated he returned to the United States only because his father had been badly injured and was close to death. Although his father survived, he remained in the United States to assist in his father's rehabilitation. Third, his commitment to respect our laws. During his most recent stay in the United States (14 months), Bejar did not commit any new offenses. He said he had no intention of returning to the United States once he is again deported to Mexico. Finally, extensive support of his family and church, evidenced by their numerous letters to the court.[4]

The government opposed Bejar's variance request. It noted Bejar had been in prison for 14 months[5] and not been harmed despite his claim he is in danger for leaving the gang. It stated the Federal Bureau of Prisons (BOP) is accustomed to handling former gang members and is capable of ensuring Bejar's safety. The

---

[4] In addition to requesting a variance, Bejar objected to the PSR, arguing he was not placed on parole for his prison battery conviction and therefore 2 points should not have been added to his criminal history for having committed the instant offense while under a criminal justice sentence. At sentencing, Bejar withdrew this objection after the probation officer produced documentary evidence showing Bejar had been on parole at the time he committed the instant offense.

[5] The government claimed Bejar had been in prison for 14 months. It reached this calculation based on its belief Bejar had been in prison since April 2006. However, Bejar was not arrested until August 2006 – he had only been in prison 10 months.

government further argued Bejar's father's injury and recovery were not so extraordinary as to warrant a significant variance.[6]

The parties appeared for sentencing at which the district court addressed Bejar's main arguments for a variance. In its view the benign reason for his reentry, his father's injury, did not justify a variance. While the court was sympathetic to Bejar wanting to be with his injured father, it believed "this pattern is so common . . . because almost everybody at some point has sickness on one side of the border . . . , that it's not so extraordinary that it falls outside of the heartland of cases." (R. Vol. III at 21.) It also noted Bejar remained in this country over a year after his father's accident. Turning to Bejar's fear of gang retaliation while in prison, the court stated Bejar had been able to protect himself or secure prison protection since he left the gang. While it had concerns about the BOP's lack of protective facilities, it believed the BOP had experience with gangs and was able to ensure Bejar's safety.

On the other hand, the court determined a variance was appropriate for the changes Bejar made in his life, including leaving his gang. However, it did not

[6] The government also argued the district court should afford a presumption of reasonableness to the correctly calculated guideline range. The court rejected this argument, stating it would start with the properly calculated guideline range and then consider the § 3553(a) factors to arrive at a reasonable sentence. The court was correct. *See Rita v. United States*, 127 S.C.t 2456, 2465 (2007) ("We repeat that the presumption before us is an *appellate* court presumption. Given our explanation in *Booker* that appellate 'reasonableness' review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review.").

consider those changes sufficient to justify a variance to time-served because such a sentence would not promote the § 3553(a) factors, in particular it would not account for Bejar's serious criminal history. The court stated: "I believe [the guideline sentence] is too harsh and unreasonable, given the . . . relatively recent changes in Mr. Bejar's life. But I do think it's closer to the appropriate sentence than not." (R. Vol. III at 24.) In the end, the court determined a 60 month sentence satisfied the § 3553(a) factors and sentenced him accordingly.

### III. DISCUSSION

Bejar does not challenge the procedural reasonableness of his sentence. He only alleges it is substantively unreasonable under 18 U.S.C. § 3553(a). Specifically, Bejar asserts he was entitled to a greater variance due to his reason for reentry, the danger he faces in prison and his "change from a gang member who accumulated a number of juvenile adjudications and adult convictions to a church-going, responsible, law-abiding member of the community." (Appellant's Op. Br. at 25.)

We review the substantive reasonableness of a below-guideline sentence for abuse of discretion. *Gall v. United States*, -- U.S.--, 128 S.Ct. 586, 597 (2007). When conducting this review, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might

reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal . . . ." *Id.*

The court's refusal to vary downward more than 10 months was not an abuse of discretion. It addressed Bejar's arguments with sound reasoning and sufficient explanation.

The court adequately considered Bejar's reason for illegally entering the United States — to be with his seriously injured father. While it found the circumstances unfortunate, the court cited to three recent illegal reentry cases in which it had denied the defendant's request for a variance based on similar arguments. Because family illnesses are frequently the reason for reentry, the court concluded if it were to grant a variance in each case, "the exception would swallow the rule." (R. Vol. I, Doc. 32 at 8.) The court also noted Bejar had stayed in the United States over a year after his father's injury. The court was well within its discretion in not varying based on this factor.

The court adequately considered the serious risk Bejar faced while in prison but reasonably believed and trusted that the BOP has experience with inmates who were former gang members and is capable of ensuring his safety. Bejar contends this determination was without evidentiary support. But the same can be said for his assertions that the BOP cannot adequately protect him, and he has the burden of persuasion. While he quoted from studies concerning the effects of leaving a gang, Bejar presented no evidence, other than his counsel's bare

assertions, that the BOP lacks the ability to protect him. Bejar has apparently been adequately protected in prison since leaving the gang. While he had not previously been incarcerated within the BOP, nothing suggests he will be any more at risk there. Bejar has seemingly found ways to protect himself outside of prison as well. His alleged fear for his safety did not deter him from re-entering the United States and staying here, potentially at risk, for over a year.[7]

The court did believe Bejar's self rehabilitation, reflected in his abandonment of his gang and criminal ways, as well as letters from family and friends, warranted a variance. And a 10 month (14%) variance from the bottom of the guidelines is generous considering the other § 3553(a) factors, in particular Bejar's serious criminal history. The court seriously contemplated the circumstances of this case in light of the sentencing goals of § 3553(a) and adequately addressed Bejar's arguments. *See Rita*, 127 S.Ct. at 2468-69 (rejecting defendant's argument that district court did not provide adequate reasons for particular sentence where it was clear from record court listened to defendant's arguments and considered supporting evidence but simply found the circumstances did not warrant a below-guideline sentence).

---

[7] Bejar also claims the district court did not consider the extreme deprivations he will suffer as a result of being placed in protective custody status, thereby subjecting him to harsher prison conditions and punishment than the average reentry defendant. The court did not consider this argument because Bejar never raised it and we will not consider it here. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1260 (10th Cir. 2006).

**AFFIRMED.**

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge