**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 28, 2006
Decided April 3, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| No. 06-2285 | |
| | Appeal from the United States District |
| UNITED STATES OF AMERICA, | Court for the Northern District of |
| *Plaintiff-Appellee*, | Illinois, Eastern Division. |
| | |
| *v.* | No. 02 CR 892 |
| | |
| ENAAM M. ARNAOUT, | Suzanne B. Conlon, |
| *Defendant-Appellant*. | *Judge*. |

**O R D E R**

Enaam Arnaout raises several challenges to the sentence he received after pleading guilty to conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"). We conclude that the district court committed no reversible error when it determined the amount of loss attributable to him. We also uphold its decision to increase Arnaout's sentence based on harm to refugees who did not receive donated funds. Next, we find that the district court reasonably declined to reduce Arnaout's sentence based on

his post-offense conduct. Finally, we cannot say that the sentence Arnaout received was unreasonable. We therefore affirm Arnaout's sentence.

## I. BACKGROUND

Enaam Arnaout pled guilty, pursuant to a written plea agreement, to conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(d). Arnaout acknowledged in his plea agreement that beginning in or about May of 1993, he was responsible for and directed the operations of the Benevolence International Foundation, Inc. ("BIF") in the United States. BIF had received tax-exempt status in March of that year.

Arnaout admitted in his plea that BIF solicited donations from the public by purporting that BIF and its related overseas offices were part of a charitable organization involved solely in humanitarian work for the benefit of civilian populations, including refugees and orphans, with a small amount used for administrative purposes. Arnaout further admitted that he and others agreed to conceal from donors, potential donors, and federal and state governments that a material portion of the donations received by BIF based on BIF's misleading representations was being used to support soldiers overseas. At the initial sentencing, the district court calculated the applicable United States Sentencing Guidelines range as 121 to 151 months' imprisonment. The district court imposed a sentence of 136 months' imprisonment, and Arnaout appealed.

In our opinion resolving Arnaout's first appeal, we concluded that insufficient evidence supported a four-level enhancement he had received for offenses involving fifty or more victims pursuant to U.S.S.G. § 2B1.1(b)(2)(B). *See United States v. Arnaout*, 431 F.3d 994, 998 (7th Cir. 2005) ("*Arnaout I*"). We also upheld the district court's decision not to impose a terrorism enhancement under U.S.S.G. § 3A1.4, and we instructed the district court to consider on remand whether Arnaout should receive an abuse of trust enhancement pursuant to U.S.S.G. § 3B1.3. *Id.* at 1000-03. We did not reach three of the challenges Arnaout raised to his sentence – the amount of loss calculation, an increase to his sentence based on harm to refugees, and a Sixth Amendment argument.

After our remand, the district court directed the parties to submit memoranda and held an additional hearing. In calculating the advisory sentencing range under the Guidelines, the district court began with a base offense level of six pursuant to U.S.S.G. § 2B1.1(a). It added twelve levels based an amount of loss calculated to be between $200,000 and

$400,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(G). Among other things, the district court added an additional two levels based on harm Arnaout caused to those who should have received the charitable donations. The district court sentenced Arnaout to 121 months' imprisonment, and Arnaout appeals again.

## II. ANALYSIS

### A. Amount of Loss Calculation

Arnaout first argues that the district court erred when it calculated the amount of loss for which he was responsible under U.S.S.G. § 2B1.1(b)(1). We generally review a district court's determination of the amount of loss attributable to a defendant for sentencing purposes for clear error. *United States v. Sliman*, 449 F.3d 797, 800 (7th Cir. 2006).

The government maintains that Arnaout waived or forfeited any error in the district court's determination that the offense involved a loss amount of $200,000 to $400,000. Waiver is the "knowing and intentional relinquishment of a right"; it precludes appellate review. *United States v. Hill*, 552 F.3d 541, 545 (7th Cir. 2008). Forfeiture, on the other hand, occurs when a defendant accidentally or negligently fails to assert his rights in a timely fashion and can occur when a defendant fails to raise an argument before the district court in a timely manner. *United States v. Haddad*, 462 F.3d 783, 793 (7th Cir. 2006). We may review forfeited claims, but only for plain error. *Id.* Arnaout, on the other hand, maintains that he sufficiently preserved the issue such that our review should be for clear error. *See Sliman*, 449 F.3d at 800.

At the initial sentencing, the district court found that Arnaout was responsible for a loss of more than $200,000. Arnaout argued in his initial appeal that the district court erred when it determined the amount of loss. We did not resolve this issue in our opinion in *Arnaout I.* After our remand, Arnaout asked in his sentencing memorandum that the district court revisit its finding that the loss amount exceeded $200,000 when considering a reasonable sentence. During the hearing, however, Arnaout's counsel did not object when the district court said the loss fell between $200,000 and $400,000.

In any event, the district court's calculation of the loss as more than $200,000 was not clearly erroneous. Arnaout does not dispute that he was responsible for $196,653 in loss due to the improper diversion of BIF funds to purchase boots, uniforms, tents, blankets, and an ambulance for soldiers. Instead, Arnaout disputes the inclusion of items that fall

into two other categories.  For one, he challenges the inclusion of $66,991 in additional items given to soldiers on the basis that BIF did not purchase them, but, rather, they were found in an abandoned Bosnian warehouse.

He also contends that the district court should not have included the cost of an ambulance provided to Bosnian soldiers and shoes, cash, and an x-ray machine provided that the government says went to Chechen fighters.  Arnaout maintains that these items should not have been included in the loss calculation because, he contends, they furthered humanitarian efforts and were not part of his fraud.  Arnaout's plea agreement belies his suggestion that items provided to support military operations was not part of his fraud, as he acknowledged in his plea that "starting in May 1993, BIF solicited donations from the public by purporting that BIF and its related overseas officers was a charitable organization involved *solely in humanitarian work for the benefit of civilian populations, including refugees and orphans*, with a small amount being used for administrative expenses." (emphasis added). He also admitted that these representations were misleading, as he and others agreed to conceal from donors and governments that a material portion of donations to BIF was being used to support fighters overseas.

The district court concluded that a second ambulance, shoes, cash, and the x-ray machine were provided to fighters and were not provided solely for humanitarian purposes, a finding we cannot say was clearly erroneous.  The shoes alone ($34,500), for example, take the amount of loss over the $200,000 threshold.  As the district court noted, the shoes are described in a section of a document that details a shipment of uniforms for Chechens, and the uniforms were an undisputed part of the loss.  The document's statement, "Shoes: According to the request of the locals we found that they need uniforms (in the newsletter we would only say pants and shirts) thermal underwears and jackets with the shoes," can reasonably be read to suggest that the shoes would be worn along with the uniforms, and that the shoes were not provided solely for humanitarian reasons. Arnaout also maintains that no "loss" occurred because, he contends, donors providing money for those items knew the purpose of the shoes, ambulance, and x-ray machine. Although the newsletters inform readers that BIF provided humanitarian assistance in Bosnia and Chechnya, they make no mention of doing so for military purposes.  For example, one newsletter states that "protective shoes to civilians from land-mines" had been provided in Chechnya, but the documents do not alert the reader that donations would be used to help support non-civilian fighters.  As a result, the district court's

determination that the amount of loss fell between $200,000 and $400,000 was not clearly erroneous.

### B.    Additional two levels based on refugee victims

Arnaout also argues that the district court erred when it increased Arnaout's sentence based on harm caused to refugees who did not receive donated funds.  At the initial sentencing hearing, the district court added an additional two levels based on harm caused to refugees who did not receive the donated funds.  Although we did not explicitly reach Arnaout's challenge to these two levels in our first opinion in light of our remand for resentencing, we said:

> We note, however, that the district court's factual determination that Arnaout also victimized Chechen and Bosnian refugees by fraudulently diverting to the military charity funds that were meant for refugees was not clearly erroneous. Contrary to Arnaout's argument, the district court's determination here was not based on pure speculation. Instead, the district court reviewed actual letters from refugee victims submitted by the government to determine the harm caused by Arnaout's diversion of funds and reasonably concluded that the diversion of the charity funds caused a tangible harm to the refugees that was not adequately represented in the Guidelines calculations.

*Arnaout I*, 431 F.3d at 1004.

After our remand, the district court calculated an adjusted offense level of 28, with a criminal history category of I.  The resulting guideline range was 78 to 97 months.  The government then asked that the district court impose a two-level enhancement for the victimization of vulnerable persons as it had at the initial sentencing, namely for refugees who were the intended beneficiaries of the funds.  Under U.S.S.G. § 3A1.1(b)(1), a two-level enhancement is appropriate "if the defendant knew or should have known that the offense involved a vulnerable victim."  The commentary to the Guidelines states that a person is a vulnerable victim if the individual is "unusually vulnerable due to age, physical, or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(1), comment n.2.

Arnaout argued in response that refugees who did not receive donated funds were not victimized because the donors intended the money to go to the military, not to the victims.

The district court stated it could not find any support in the record to conclude that "funds were either marked for use by military in Bosnia and Chechnya. . . . I didn't see . . . any basis for concluding that funds were segregated so that donors were solicited and their funds were used and set aside for a noncharitable purpose, that is, to support military endeavors in those two areas of the world." The district court found by a preponderance of the evidence that there were vulnerable victims who suffered as a result of what were supposed to be charitable funds used instead for military purposes. It concluded that its consideration supported "the addition of a 2 level upward adjustment because vulnerable victims were affected by this fraud and they were affected quite basically."

We find no error in the imposition of the enhancement. As the district court explained, the solicitations speak in terms of humanitarian uses, and the newsletters and solicitations to which Arnaout points give no indication that money donated to BIF would be used to support military personnel. Moreover, the district court had before it letters from widows, orphans, and refugees who wrote that even small amounts of money could have saved lives. The district court also explained that its Guidelines calculation had not accounted for harm to the intended recipients of the funds, as opposed to the donors themselves. As a result, the district court committed no clear error when it concluded that the purported recipients were harmed when the funds were instead used to support military objectives overseas and added two levels as a result.

### C. Post-offense conduct

Arnaout next argues that the district court erred in refusing to consider post-offense good conduct when it determined his sentence. On remand, Arnaout asserted that while in prison, he received twenty credits of adult college-level education with a grade point average of 3.60, taught Arabic to other prisoners, and received certificates of completion for additional classes he took in prison. He contends that his post-offense conduct warranted a lower sentence under 18 U.S.C. § 3553(a).

At the hearing on remand, the government maintained that Arnaout's post-offense record was at least mixed. It told the district court that it had information from the federal correctional system that Arnaout had been adjudicated guilty of five disciplinary fractions while in prison over the preceding two years. In light of this additional conduct, the government argued that the district court should not lower Arnaout's sentence on the basis of his conduct after the offense.

After hearing both sides' arguments, the district court declined to reduce Arnaout's sentence on the basis of any post-offense rehabilitation and said it did not see a basis for a downward departure. It also made clear that it was not making a finding that Arnaout had engaged in bad conduct, saying there were a number of reasons behind interactions between inmates and prison authorities. We agree with the government that when read in context, the district court's ruling did not evince a belief that it could not vary from the advisory guidelines based on a defendant's good conduct after conviction, but rather that the district court concluded no such deviation was warranted in this particular case in light of the circumstances.

### D. Reasonableness of sentence

Finally, Arnaout challenges the reasonableness of his sentence. The Supreme Court in *Rita v. United States*, 551 U.S. 338 (2008), rejected Arnaout's argument that a defendant's Sixth Amendment rights are violated when a circuit court affords a rebuttable presumption of reasonableness to a sentence imposed within a properly-calculated guidelines range. In our circuit, we afford such a presumption of reasonableness to a properly-calculated within-Guidelines sentence. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).

The parties disagree as to whether the two levels the district added for vulnerable victims constituted an application of the Guidelines' vulnerable victim enhancement (and therefore our review would be of a within-Guidelines sentence) or whether it was an exercise of the district court's discretion to impose a sentence outside the Guidelines. At the initial sentencing hearing, the district court added these two levels as "its own upward departure." At the sentencing hearing after remand, before discussing the vulnerable victim adjustment, the district court recognized that the guidelines range would be 78 to 97 months. The parties then discussed the adjustment, and the district court decided to impose two levels to account for harm to refugees, saying "that adds 2 levels to the guidelines," with a resulting adjusted offense level of 30 and a guidelines range of 97 to 121 months.

Even if we agree with Arnaout that the resulting sentence was not a within-Guidelines sentence, though, we cannot say that the district court abused its discretion in imposing a 121-month sentence. *See Gall v. United States*, 128 S. Ct. 586, 594 (2007). The district court carefully considered Arnaout's circumstances, held lengthy hearings, and reviewed many documents. In deciding on a sentence of 121 months, the district court explained that

Arnaout's crime was not a "garden-variety type" of fraud but rather involved a large international organization that said it would use the funds it raised for humanitarian purposes. The district court also pointed to the fact that Arnaout had obstructed justice in a related proceeding. Moreover, it did not accede to the government's request that it exercise its discretion to reach the same 136-month sentence it had imposed at Arnaout's initial sentencing. The district court also explained that it thought the additional two levels for harm to refugees warranted because its calculations did not account for the harm to those persons. And to the extent this was a deviation from an advisory Guidelines range, it was one commensurate with the two-level vulnerable victim enhancement in the Guidelines. Under the circumstances of this case, the 121-month sentence was not unreasonable.

## III. CONCLUSION

For the reasons stated in this order, we AFFIRM Arnaout's sentence.