[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 8, 2011
JOHN LEY
CLERK

_____

No. 10-10051

_____

D.C. Docket No. 5:09-cr-00029-HL-CWH-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

HAROLD LEROY HOUSLEY, JR.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 8, 2011)

Before WILSON and PRYOR, Circuit Judges, and BUCKLEW,* District Judge.

PER CURIAM:

This appeal involves the reasonableness of the sentence for the robber of a

_____

*Honorable Susan C. Bucklew, United State District Judge for the Middle District of
Florida, sitting by designation.

post office who thrust his revolver close to the face of a postal clerk, demanded money, and shouted a racial slur and obscenities and had a history of violent criminal behavior. Harold Leroy Housley Jr. challenges his sentence of 120 months of imprisonment, which is 42 months above the guidelines range of 63 to 78 months, for robbery of money belonging to the United States. 18 U.S.C. § 2114(a). Because the district court adequately explained its decision to vary upward and Housley's conduct posed a grave risk of harm that terrified a postal clerk and was part of a pattern of escalating violence, the district court did not abuse its discretion by sentencing Housley to a term of 120 months of imprisonment. We affirm.

## I. BACKGROUND

Sometime between December 1, 2008, and December 5, 2008, Willie J. Williams Jr. and Darius J. Flowers were attempting to purchase marijuana when they encountered Vernon Anthony Reid and Harold Leroy Housley Jr. Reid and Housley asked Williams and Flowers if they wanted to "make some easy money." Williams and Flowers agreed, and the four men went to Housley's residence. When they arrived at Housley's residence, Reid left briefly and returned with a sawed-off shotgun and a revolver. The four men devised a plan to "make some easy money" by robbing a post office in Macon, Georgia.

2

Early in the morning of December 5, 2008, the four men went to the post office in Williams's vehicle to conduct surveillance. Flowers and Williams walked into the post office and asked for an application for employment to determine how many people were in the post office and where the cameras were located. Flowers and Williams returned to the vehicle and informed Housley and Reid that there were several customers inside the post office, including a peace officer, so the men decided to return later.

Later that afternoon, the men returned to the post office. Housley and Reid, clothed entirely in black and wearing ski masks, entered the post office with the shotgun and the revolver. After they entered the post office, Housley and Reid drew their weapons and ordered all the customers to lie on the ground.

Housley and Reid approached the counter and pointed their weapons close to the postal clerks' faces and shouted, "[O]pen the mother fucking register, nigger." Housley and Reid tossed a canvas bag on the counter and ordered the clerks to "put the money in the fucking bag." The clerk at whom Reid was pointing the shotgun froze with fear and did not open his cash register. After Housley successfully emptied a different register, he assisted Reid. Housley and Reid became increasingly agitated with the petrified postal clerk and thrust their weapons further into the clerk's face, about 12 inches away. The clerk began to

3

press keys on the cash register, and he eventually pressed the right combination to open the drawer.

Housley and Reid fled the post office with $6,769 in cash and three money orders. After the robbers left, the employees and customers locked themselves behind a metal partition in the building. Housley and Reid returned to the getaway car, and Williams drove to a safe location where Housley and Reid paid Williams and Flowers $350 each for their participation in the robbery.

Housley later was arrested and charged with conspiracy to commit robbery of money belonging to the United States, 18 U.S.C. §§ 371, 2114(a), and robbery of money belonging to the United States, id. §§ 2, 2114(a). Housley pleaded guilty to the robbery charge, and the government dismissed the conspiracy charge.

The district court sentenced Housley on December 17, 2009. The presentence investigation report provided a base offense level of 20. See U.S. Sentencing Guidelines Manual § 2B3.1(a) (2009). The report added two points because the property of a post office was taken, id. § 2B3.1(b)(1), and six points because a firearm was "otherwise used," id. § 2B3.1(b)(2)(B). The report deducted three points for acceptance of responsibility. Id. § 3E1.1 The report discussed Housley's two earlier convictions for simple battery when Housley was 17 and for battering his girlfriend when he was 21, the latter of which occurred

less than two months before robbing the post office. The report provided an advisory guidelines range of 63 to 78 months based on Housley's criminal history category of two and an offense level of 25. The report stated that the statutory maximum for Housley's offense was 25 years of imprisonment. See 18 U.S.C. § 2114(a).

At the sentencing hearing, the district court accepted the presentence investigation report and heard from witnesses for the government and for Housley. A postal inspector testified about his interviews of the postal employees present during the robbery. Housley's attorney asked the district court to consider several mitigating circumstances about Housley: he was 22 years old; his father died when he was 10 years old; he did not have a loving relationship with his stepfather; he wanted to be a father figure and provide for his three-year-old son; he was remorseful; the robbery was his first felony conviction; and he planned to obtain his general education development diploma. The district court also heard from Housley, Housley's mother, and from the mother of Housley's child.

After the district court considered the presentence investigation report and the statements from the witnesses made at the sentencing hearing, it varied upward from the advisory guidelines range to impose a sentence of 120 months of imprisonment followed by five years of supervised release. The district court

stated that it had considered the statutory sentencing factors. See 18 U.S.C. §

3353(a). The district court explained that the guidelines range did not adequately

address the circumstances surrounding the offense and did not ensure that the

public would be protected from further crimes by Housley:

> The sentencing guidelines have been considered and taken into account. . . .
>
> The Court has carefully considered the information contained in the pre-sentence report and has determined that there exist factors to warrant a variance pursuant to the provisions of 18 United States Code Section 3553. This allows for a consideration of the nature and circumstances of the defendant to reflect the seriousness of the offense and to afford adequate deterrents to criminal conduct. It should also protect the public from further crimes of this defendant.
>
> The circumstances surrounding the offense, in particular the fact that the weapons were placed very, very close to the faces of the victims were not reflected in the guideline calculations, and it's the judgment of this Court that the six level adjustment for the specific offense characteristic firearm otherwise used at Section 2B3.1B2 does not adequately address the seriousness of the danger imposed to the employees and customers.
>
> Based on this factor, the Court is of the opinion that a sentence outside the guidelines more appropriately addresses these factors and ensures that the public is protected from further crimes of this defendant. . . . .
>
> The sentence as imposed is an appropriate sentence in this case, complies with the factors that are to be considered as set forth at 18 United States Code section 3553(a) and adequately addresses the totality of the circumstances. . . .

## II. STANDARD OF REVIEW

"[A]ll sentences, whether within or without the guidelines, are to be

reviewed only for reasonableness under an abuse of discretion standard." United States v. Irey, 612 F.3d 1160, 1186 (11th Cir. 2010) (en banc), petition for cert. filed, 79 U.S.L.W. 3361 (U.S. Nov. 24, 2010) (No. 10-727). The party challenging the sentence bears the burden of establishing that it is unreasonable. See United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "While rigid mathematical formulas and proportionality tests cannot be used, the [Supreme] Court [has] concluded that 'the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant[]' . . . ." Irey, 612 F.3d at 1186 (quoting Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007)). "[A] major departure should be supported by a more significant justification than a minor one." Gall, 552 U.S. at 50, 128 S. Ct. at 597. "In other words, the justification for the variance must be 'sufficiently compelling to support the degree of the variance.'" Irey, 612 F.3d at 1186–87 (quoting Gall, 552 U.S. at 50, 128 S. Ct. at 597). "Checking to see that the justification is sufficiently compelling remains the duty of the court of appeals." Id. at 1187.

## III. DISCUSSION

Housley argues that his sentence is unreasonable for two reasons. First, Housley contends that the district court committed procedural error. Second, Housley contends that his sentence is substantively unreasonable.

Housley argues that his sentence is procedurally unreasonable because the district court failed to explain adequately its reasons for varying upward, but his argument is belied by the record. The Supreme Court has explained that procedural errors may include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall, 552 U.S. at 51, 128 S. Ct. at 597. When it explains its sentence, the district court must "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007). We have never held "that a sentencing judge is required to articulate his findings and reasoning with great detail or in any detail for that matter." Irey, 612 F.3d at 1195. The district court explained that its variance was necessary to reflect the seriousness of the offense and to protect the public from Housley's escalating violence.

Housley must overcome a high hurdle to establish that his sentence is substantively unreasonable. "Because of its 'institutional advantage' in making sentence determinations," United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir.) (quoting Gall, 552 U.S. at 52, 128 S. Ct. at 598), cert. denied, 129 S. Ct. 2847

(2009), "a district court has 'considerable discretion' in deciding whether the §

3553(a) factors justify a variance and the extent of one that is appropriate." Id.

(quoting United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008)). We may

not presume that a sentence outside the guidelines range is unreasonable. Irey,

612 F.3d at 1187. This Court will vacate a sentence only if, after considering the

totality of the facts and circumstances, it is "left with the definite and firm

conviction that the district court committed a clear error of judgment in weighing

the § 3553(a) factors by arriving at a sentence that lies outside the range of

reasonable sentences dictated by the facts of the case." Id. at 1190 (quoting Pugh,

515 F.3d at 1191). The district court is "permitted to attach 'great weight' to one

factor over others." Shaw, 560 F.3d at 1237 (quoting Gall, 552 U.S. at 57, 128 S.

Ct. at 600). Even if we "might reasonably have concluded that a different

sentence was appropriate[,] [that conclusion] is insufficient to justify reversal of

the district court." Gall, 552 U.S. at 51, 128 S. Ct. at 597.

Several factors support the decision of the district court to sentence Housley

to a term of imprisonment above the guidelines range. Housley used a weapon

capable of inflicting widespread damage and loss of lives when robbing a post

office during business hours. The district court reasonably determined that "[t]he

circumstances surrounding the offense, in particular the fact that the weapons were

9

placed very, very close to the faces of the victims were not reflected in the guideline calculations," and "a sentence outside the guidelines more appropriately addresses these factors and ensures that the public is protected from further crimes of this defendant." Housley has committed other crimes of violence and this latest offense placed many lives in jeopardy. A longer sentence better ensures that the public is protected from Housley's further crimes.

The district court did not abuse its discretion when it sentenced Housley to 120 months of imprisonment. The district court considered all of the sentencing factors and reasonably determined that an upward variance of 42 months was necessary to reflect the seriousness of Housley's crime, take into account his history and characteristics, punish him adequately for his crime, deter him from future crimes, promote respect for the law, and protect the public.

## IV. CONCLUSION

Because Housley's sentence is both procedurally and substantively reasonable we **AFFIRM**.