[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 6, 2011
JOHN LEY
CLERK

No. 10-15009
Non-Argument Calendar

_____

D.C. Docket No. 1:00-cr-00727-JEC-ECS-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONIO DARNELL KING,
a.k.a. Darnell King,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 6, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Antonio Darnell King appeals the six-month time-served sentence imposed

by the district court upon the revocation of his supervised release, which was ordered to run consecutively to a 78-month sentence for assault on a federal officer.[1] He argues that his release-revocation sentence was procedurally and substantively unreasonable.[2] For the reasons set forth below, we affirm.

I.

In 2001, King pled guilty to one count of armed robbery, in violation of 18 U.S.C. §§ 1951, 2. He was in criminal history category III at that time. He was sentenced to 63 months' imprisonment followed by 3 years' supervised release, and he was ordered to pay restitution in the amount of $35,680. His term of supervised release began on October 7, 2005. In August 2007, the district court modified King's release to require him to reside for five months at Dismas Atlanta.

In November 2007, the probation office alleged that King had committed six violations of supervision: (1) he was in arrears on his restitution payments;

---

[1] King has appealed the assault sentence separately in *United States v. King*, No. 10-15034.

[2] King further argues that the district court failed to elicit fully articulated objections to the sentence, as required by *United States v. Jones*, 899 F.2d 1097 (11th Cir. 1990), *overruled in part on other grounds*, *United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (*en banc*). Where a district court fails to comply with *Jones*, we review under the appropriate standard of review for preserved error or, if the record is insufficient to permit meaningful appellate review, we remand for further sentencing proceedings. *See United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006); *United States v. Page*, 69 F.3d 482, 492 (11th Cir. 1995). Here, the record is sufficient to permit review of King's reasonableness claim, which fails regardless of whether we review for plain or preserved error. Accordingly, we decline to address King's *Jones* claim and assume *arguendo* that the standards of review for preserved error apply to his reasonableness claim.

(2) he had failed to report for drug testing on four dates in 2007; (3) he had tested positive for marijuana use on three dates in 2007; (4) he had missed at least four appointments for drug-treatment aftercare; (5) he had failed to report to Dismas House as instructed, and his probation officer had been unable to reach him since that date; and (6) he had reported in October 2007 that he was moving from his apartment, but he had not provided his new address to the probation office.

An arrest warrant was issued in November 2007 and was executed on April 24, 2008. At a revocation hearing in May 2008, King admitted the allegations in the petition. He added that (1) he fell behind in his restitution payments because he had difficulty finding suitable work, (2) he missed some aftercare appointments but had benefitted from his involvement with the aftercare doctor, and (3) he had not used good judgment in failing to report to Dismas House, which occurred because he had health problems and "got caught up in" parenting his children. He argued for a sentence within the guideline range of 5 to 11 months' imprisonment.

The government recommended 14 months' imprisonment, arguing that King had committed the violations despite having repeatedly received the benefit of the doubt from his probation officer. The government then described the circumstances surrounding King's arrest for the supervision violation. According to the government, on April 18, 2008, marshals saw King in the West End area of

Atlanta and attempted to pursue him. They maintained speeds of 80 to 100 miles per hour, and King ran red lights, crossed the line into oncoming traffic, and almost struck civilian vehicles. No one was harmed, but King eluded the marshals and escaped. A 14-year-old child was in King's car at the time. On April 24th, agents saw him again, turned on their lights, and attempted to chase him and to block his vehicle. One agent might have rammed King's vehicle in order to stop him. Under the circumstances, the government saw a need to account for King's respect for the law and the needs for protection of the public and deterrence.

King's attorney noted that these alleged events had not been made part of the revocation petition and that the details were not yet clear. Counsel expressed concern that any testimony by King at the instant hearing would have Fifth Amendment implications if the government were to bring charges based on the incident. He also argued that the probation officer's willingness to work with King spoke not only to her character but to King's potential for reformation.

King's ex-wife stated that if there was a boy in the car with King during the chase, it was not their son, Antonio. She said that King was a good father and that he provided for their two children, his daughter with his current girlfriend, his sister and her children, and his parents. King's father also spoke on King's behalf.

King himself expressed his appreciation for the probation officer's

4

assistance. He said that he had taken care of his infant daughter by himself while his girlfriend was pursuing a career, and that he was unable to keep up his restitution payments because he earned only $900 per month. He had failed to report to Dismas House because he and his daughter were living "hotel to hotel." He acknowledged that he had made a mistake by smoking marijuana, which he did to address the loss of appetite associated with his stomach ulcer. He added that he visited his other children, attended all of Antonio's games, and coached "little league" football. He acknowledged that he was a bad example for Antonio, but he felt that he "paint[ed] a picture" that made Antonio "want[] to do something." At the time of his arrest, King was providing for his children by working as a painter.

The court said that, if the government were willing not to charge King with the assault, it would consider the facts of the chase and sentence King to the statutory maximum of 24 months' imprisonment for the release violation. The government stated that, no matter what happened at the instant hearing, King was going to face some sort of prosecution for assault. Accordingly, the court continued the revocation hearing to allow the parties to resolve the assault charge. It stated that it would revoke King's release and impose some prison sentence, so the only remaining issue was the length of the sentence that would be imposed.

In July 2010, the government filed a criminal information charging King

5

with assaulting a U.S. Marshal on April 18, 2008, with intent to commit the state felony of fleeing or attempting to elude a police officer, in violation of 18 U.S.C. § 111(a)(1). He pled guilty and was scheduled for a joint sentencing hearing to address both the assault charge and the revocation petition.

In his October 2010 sentencing memorandum, King set forth various mitigating factors that he wished the court to consider with respect to the length of the overall sentence for the assault and revocation. He also noted that the government originally had sought a 14-month sentence for the revocation and that the court had indicated that it would impose a 24-month sentence if the government opted not to bring a separate assault charge. As he had now been in jail for almost 30 months, he requested a sentence of time served, which would consist of 14 months for the revocation and 16 months for the assault charge.

At the sentencing hearing, King acknowledged that his actions were wrong, but he argued that his guideline range of 63 to 78 months' imprisonment for the assault charge was too high and that a total time-served sentence of 30 months would be reasonable. He noted that his family was threatened and he was placed in protective solitary confinement after the government inadvertently "outed" him as an informant, and that he was on medication for post-traumatic stress disorder and anxiety. He acknowledged that "he had messed up," but he argued that his

6

family needed him, he was a dedicated and loving father and son, and he could do the right thing. He noted that he was shocked with a Taser many times during the April 24th arrest and that he suffered continuing eye problems as a result. He stated that he had brought that upon himself, but that the court could consider it as part of the consequences he had already experienced. King also submitted letters of support from his family, and his father spoke on his behalf. King himself addressed the court, stating that he was responsible for the April 18th chase, he was sorry for his conduct, and he knew that someone could have been hurt.

The government reiterated its earlier argument about the seriousness of the April 18th chase, pointed out violent conduct in King's criminal record, and argued that King's multiple probation and release violations indicated a defiance of supervision. It requested a within-guideline sentence for the assault charge, consecutive to a 14-month sentence for the release revocation.

The court heard testimony from the marshal who was the victim of the April 18th assault. Counsel argued that King already had been deterred from future misconduct. King himself spoke about the April 24th arrest, alleging that the officers did not "want to own up to" their misconduct and that they used excessive force because they were angry about the first incident. The court interrupted him to say that his "self-pitying" and "preoccupation with being angry" about the arrest

7

were inappropriate and would result in a higher sentence. King told the court that he knew he had been wrong on April 18th, and that he apologized for putting the marshals in danger that day. Counsel explained that King was very contrite about his conduct on the 18th but was "a little bitter" about the events of the 24th.

After resolving an offense-level issue for the assault charge, the court discussed the reasonableness of that guideline range, ultimately finding that King treated rules as if they did not apply to him. It noted his "petty release violations" and irresponsibility, as well as the dangerousness of the April 18th chase. It stated that the violations in the revocation petition were "such nickel and dime stuff" that it might have merely ordered additional drug treatment if King had turned himself in, but instead, he led officers on a chase with a child in the car. The court called King's reaction "impulsive" and "disturbing" and found that he posed a danger. It also reviewed King's criminal history. It identified its primary concerns as the need for deterrence, the need to protect society from King's dangerous behavior, and King's fixation on "how wronged he was by the officers."

The court imposed a total 84-month sentence, consisting of 6 months for the release revocation followed by 78 months for the assault charge, as well as 3 years' supervised release for the assault charge. No supervision was imposed for the revocation. In its subsequent written order, the court stated that the revocation

8

sentence should be imposed with credit for time served.

## II.

After *Booker*,[3] sentences imposed upon revocation of supervised release are reviewed for reasonableness. *United States v. Sweeting*, 437 F.3d 1105, 1106-07 (11th Cir. 2006). In our two-step reasonableness review, we first must ensure that the district court did not commit any significant procedural error, such as failing to consider the § 3553(a) factors, to explain the sentence adequately, or to calculate the guideline range correctly. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). We then review the substantive reasonableness of the sentence under an abuse-of-discretion standard. *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010) (*en banc*), *cert. denied*, 131 S.Ct. 1813 (2011).

> When the district court opts to revoke supervised release, it may
>
> require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release[.]

§ 3583(e)(3). Where, as here, the defendant was on supervised release for a Class C felony, no such sentence may exceed two years' imprisonment. *Id.*

---

[3] *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

9

Section 7B1.1 of the Sentencing Guidelines defines as a Grade C violation any conduct that (a) constitutes an offense punishable by one year's imprisonment or less, or (b) violates a condition of supervision without constituting a punishable offense. U.S.S.G. § 7B1.1(a)(3). A defendant who, like King, has his release revoked for a Grade C violation and was in criminal history category III at the time of his original conviction is subject to a guideline range of 5 to 11 months' imprisonment for the revocation sentence. § 7B1.4(a).

When imposing a term of imprisonment upon revocation of supervised release, the district court must adequately consider the sentencing factors in § 3553(a). *See* § 3583(e); *Sweeting*, 437 F.3d at 1107. The factors to be considered include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for deterrence; (3) the need to protect the public; (4) the need to provide the defendant with needed educational or vocational training or medical care; (5) the appropriate Sentencing Guidelines range; (6) pertinent policy statements of the Sentencing Commission; (7) the need to avoid unwarranted sentencing disparities; and (8) the need to provide restitution to victims. § 3553(a); *see* § 3583(e).

At the time of sentencing, the court must state the reasons for its imposition of the particular sentence. § 3553(c). Not every case requires a full opinion or a

response to every argument. *Rita v. United States*, 551 U.S. 338, 356-57, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007). Rather, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 356, 127 S.Ct. at 2468. When the sentence is within the guideline range and neither party has contested the range under § 3553(a), "the judge normally need say no more." *Id.* at 357, 127 S.Ct. at 2468. "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence . . . the judge will normally go further and explain why he has rejected those arguments. Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Id.*

The district court commits a clear error of judgment if it weighs the § 3553(a) factors unreasonably, thus arriving at a sentence that does not achieve the statutory purposes of sentencing. *Irey*, 612 F.3d at 1189. A court does not abuse its discretion, though, when it merely attaches "great weight" to a single, permissible factor or set of factors. *Gall*, 552 U.S. at 56-59, 128 S.Ct. at 600-02.

As to procedural reasonableness, King correctly notes that the district court's discussion of the Sentencing Guidelines during the 2010 sentencing hearing addressed only the offense level and sentencing range for the assault

11

offense, not the range for the revocation. However, King informed the court of the correct revocation guideline range at the 2008 hearing, and there is no indication in the record of any dispute over that range or that the court failed to take it into account at sentencing. *See* §§ 3553(a), 3583(e); *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. As to the court's 2008 suggestion of a total 24-month sentence, King had not been charged with assault at that time, and the facts surrounding the events of April 18th and 24th were then unresolved. Furthermore, the court was limited at that time by the 24-month statutory maximum sentence for the revocation. The record does not indicate whether the court would have imposed a mere 24-month sentence in 2008 if it had been unrestricted by that statutory maximum or if the assault charge had been fully developed.

Finally, the court heard lengthy argument from the parties, in memoranda and at sentencing, regarding various aggravating and mitigating factors. It noted the irresponsibility reflected in King's "petty release violations" and the fact that it might not have revoked his release for "such nickel and dime stuff" if he had turned himself in rather than fleeing. It then imposed a sentence within the 5-to-11-month guideline range. Under all the circumstances, the record indicates that the court considered the parties' arguments and had a reasoned basis for imposing the six-month sentence. *See Rita*, 551 U.S. at 356-57, 127 S.Ct. at 2468.

12

As to substantive reasonableness, King raised aggravating and mitigating factors at the sentencing hearing. Taking both hearings together, the parties discussed the events of April 2008, the victim of the assault testified, King's father and ex-wife both spoke on his behalf, and King explained the reasons for his release violations. Before imposing sentence, the court expressed concern about King's "self-pitying" and lack of contrition, his impulsiveness, and his apparent irresponsibility and disregard for rules. It noted the dangerousness of the April 18th chase and said that the violations might not have warranted revocation absent King's attempts to flee. Furthermore, the six-month sentence was near the low end of King's guideline range, and he received credit for time served. Finally, his arguments about the reasonableness of the assault sentence are not properly before us. Under all the circumstances, the six-month revocation sentence was substantively reasonable. *See Sweeting*, 437 F.3d at 1106-07.

For the foregoing reasons, we affirm King's sentence.

**AFFIRMED.**