**UNITED STATES of America,**

v.

**Shirley HUNTLEY, Defendant.**

United States District Court,
E.D. New York.

May 9, 2013.

See also 943 F.Supp.2d 383, 2013 WL 1881536.

---

**Statement of Reasons for Sentence
Pursuant to 18 U.S.C.
§ 3553(c)(2)**

JACK B. WEINSTEIN, Senior District Judge:

## I. Introduction

Defendant, former State Senator Shirley Huntley, pled guilty to embezzling $87,700 directed by the State to fund a nonprofit organization for the improvement of educational opportunities for New York City's children.

She is sentenced principally to a term of imprisonment of one year and one day, to be followed by three years' supervised release, and restitution.

This memorandum is deemed, by consent of the parties, to be part of the oral sentencing. 18 U.S.C. § 3553(c)(2).

## II. Sentencing Law

If the sentence imposed is outside the range of the United States Sentencing Commission's Guidelines, the court shall indicate its specific reasons. 18 U.S.C. § 3553(c)(2); *Rita v. United States,* 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d

203 (2007); *United States v. Cavera,* 550 F.3d 180, 190, 193 (2d Cir.2008) (en banc), *cert. denied,* 556 U.S. 1268, 129 S.Ct. 2735, 174 L.Ed.2d 247 (2009).

## III. Guilty Plea, Offense of Conviction, and Attempted Cooperation

On January 30, 2013, Huntley pled guilty to a single-count information. *See* Min. Entry, Jan. 30, 2013, ECF No. 7. It was alleged that between October 2005 and October 2008, Huntley and others conspired to defraud the New York State Department of Education by embezzling $87,700 of State funds earmarked for a "non-profit" organization under her control. 18 U.S.C. § 371; Presentence Report, Apr. 25, 2013 ("PSR") ¶ 6. She had founded the organization, Parents Information Network ("PIN"), in the early 1990s with the mission of assisting parents of New York City school children, who would then help their progeny. PSR ¶ 4. Under defendant's control was a bank account for PIN funds. *Id.* ¶ 7.

From 1994 through 2008, PIN received State grants from the New York State Department of Education earmarked for specific local causes, projects, and organizations by members of the New York State legislature. Funds so appropriated are commonly referred to as "member item funds." As described by defendant at her guilty plea, she "had an agreement with a member of the New York State Assembly" who "insured that state funds would be directed to PIN." Tr. of Guilty Plea, Jan. 30, 2013, at 14. "Once PIN received the state funds, [defendant] alerted [the person with whom she had an agreement] and together, [they] used PIN's funds for personal shopping.". *Id.*

From November 2005 until July 2007, Huntley wrote checks to herself from PIN's bank account worth more than

$18,000. PSR ¶ 8. Between October 2005 and September 2008, a Huntley family member withdrew more than $34,000 from the bank account and gave it to Huntley. *Id.* Also employed to milk PIN and the State of its funds was a sophisticated form of money laundering through the use of "straw recipients." *Id.* ¶ 9. Defendant would provide illicit payments from PIN to vendors claiming to have done legitimate work for the organization but—at defendant's direction—did no work for the charity. These "vendors" then funneled to defendant cash in an amount approximating the value of checks she wrote for them. *Id.*

As a condition of receiving State funds, PIN was required to submit written certification that the funds would be used for their stated—i.e., charitable—purpose. *Id.* ¶¶ 5, 10. Huntley falsely represented in certified forms to the New York State Department of Education that the funds acquired for PIN would be used to support its charitable mission. *Id.* ¶ 10. Those statements were knowingly untrue and criminal.

Although uncharged, it is relevant that defendant has agreed, as part of her plea agreement, to make a restitution payment of $1,000 to the Port Authority of New York and New Jersey ("Port Authority") for her part in a bribery scheme related to JFK Airport. *Id.* ¶¶ 12–15; Gov't Sentencing Mem., May 3, 2013, ECF No. 17 ("Gov't Mem."), at 2–3. JFK Airport was located in defendant's State Senate district. Gov't Mem. 2. According to the government, in March 2012, one of Huntley's colleagues in the New York State Senate inquired whether she could assist a businessman who was seeking to expand his business at JFK Airport. PSR ¶ 13; Gov't Mem. 2–3. It was suggested by Huntley's colleague in the State Senate that she use her influence to help the

businessman in exchange for payment. PSR ¶ 13; Gov't Mem. 2–3. Between March 2012 and May 2012, defendant contacted a representative from the airport with the goal of persuading the Port Authority to provide additional rental space to the businessman. PSR ¶ 15. Although Huntley's lobbying on behalf of the businessman was ultimately unsuccessful, she accepted a cash payment of $1,000 for her efforts. *Id.*

Relevant to the instant sentence are defendant's criminal efforts to conceal the fact that a non-profit organization, Parent Workshop, operated by Huntley's niece and one of her political aides was, like PIN, misappropriating member item funds. *Id.* ¶ 32. In the case of Parent Workshop, the funds to be stolen were doled out through Huntley's disbursement of member item funds. Public funds she steered to Parent Workshop—some $30,000—were embezzled for personal use. *Id.* In December 2011, Huntley's niece and the political aide were charged with larceny and other crimes by the New York State Attorney General ("NYAG"). *Id.* During the course of the investigation, Huntley falsified records to obstruct the probe. *Id.* She was criminally charged for those acts by the NYAG and pled guilty in Nassau County Supreme Court to the State law felony of tampering with physical evidence, N.Y. Penal Law § 215.40(1)(a). *Id.* She was sentenced earlier this year to a sentence of five years' probation and ordered to pay a fine of $1,000 by the State court. *Id.*

Huntley's illicit conduct with respect to PIN, JFK Airport, and Parent Workshop were revealed to federal authorities through a judicially-authorized wiretap of her cellular telephone in the spring of 2012. *See* Def. Mem. 4. After she was approached by FBI agents and confronted with proof of her criminal conduct, Hunt-

ley attempted to cooperate with the government. *Id.* At the government's direction, she taped State legislators and other officials. *Id.* at 4–5. The names of the individuals Huntley recorded were revealed by order of this court on May 7, 2013. *See* Findings of Fact and Law, Mem., Order, and Stay, May 7, 2013, ECF No. 21, 943 F.Supp.2d 383, 2013 WL 1881536 (E.D.N.Y.2013). Some of the evidence produced by defendant's cooperation has been useful to law enforcement authorities. Gov't Mem. 5.

During initial proffer sessions in 2012, defendant generally accepted responsibility for actions but, according to the government, "often provided answers which were false, implausible and inconsistent." *Id.* at 5. As described by the government, she "provided incomplete, inaccurate and inconsistent information regarding details concerning the extent of her theft, as well as the nature and extent of the involvement of other co-conspirators." *Id.* Because she did not serve, in the eyes of the government, as an effective cooperating witness, no cooperation agreement was offered to her. *Id.* at 5–6.

## IV. Guidelines Calculation and Available Sentences

The recommended Guidelines sentence was calculated on the record. *See generally* Tr. of Sentencing Hr'g, May 9, 2013. The total offense level is 15 and defendant's criminal history is category I (the lowest category), yielding a Guidelines range of imprisonment of between 18 and 24 months. The Guidelines provide a base level offense of 6. U.S.S.G. § 2B1.1(a)(1). A series of upward enhancements were applied: eight points because the total loss exceeded $70,000 (U.S.S.G. § 2b1.1(b)(1)(E)); two points because "the offense involved a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency" (U.S.S.G. § 2B1.1(b)(9)(A)); and two points for defendant's leadership role in the offense (U.S.S.G. § 3B1.1(c)). The calculation also reflects a three-point downward adjustment for defendant's acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a, b). The offense to which Huntley pled carries a maximum term of imprisonment of five years. 18 U.S.C. § 371.

Under the Guidelines, it is recommended that any term of imprisonment be followed by a term of supervised release of one to three years. U.S.S.G. § 5D1.2(a)(2). Under the applicable statute, a supervised release term of up to three years is permitted. 18 U.S.C. § 3583(b)(2). While defendant is ineligible for probation under the Guidelines, *see* U.S.S.G. § 5B1.1, the applicable statute permits, in lieu of a prison term, a non-incarceratory term of probation of one to five years, 18 U.S.C. § 3561(c)(1).

The maximum fine under the applicable criminal statute is $250,000, 18 U.S.C. § 3571(b). The calculated Guidelines range is $4,000 to $40,000. U.S.S.G. § 5E1.2(c)(3). Restitution of $87,700 is required to be paid to the New York State Department of Education. 18 U.S.C. § 3663A. Additional restitution of $1,000 is to be paid to the Port Authority pursuant to defendant's plea agreement. A special assessment of at least $100 is mandatory. 18 U.S.C. § 3013.

## V. Sentence Imposed

Defendant was sentenced in open court on May 9, 2013. The proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere and the factors and considerations that a district court must evaluate in imposing a sentence under 18 U.S.C. § 3553(a). *See In re Sentencing*, 219 F.R.D. 262, 264–65

(E.D.N.Y.2004) (possible utility of video-tape on appeal).

The parties agree on the calculated Guidelines range. The government contends that "a sentence within the advisory Guidelines range is justified" but concedes "a sentence below the Guidelines range would also be reasonable given the circumstances presented here." Gov't Mem. 6. In her sentencing memorandum, defendant did not suggest a specific sentence but asked that the court "consider her years of good work and selfless service, her family circumstances, the declining health of her children and her husband, and her assistance to the government." Def. Sentencing Mem., May 2, 2013, ECF No. 30, ECF No. 16 (filed under seal) & ECF No. 26 (filed publicly with redactions), at 9.

A sentence of one year and one day of incarceration and three years' supervised release is imposed. Huntley will be subject to extensive controls by the court's Probation Services while on supervised release. She will be barred from possessing a firearm, ammunition or any other destructive device. Her residence, vehicle, or any premises under her control will be subject to a search without a warrant whenever a Probation officer has a reasonable belief that contraband or evidence of a violation of the conditions of release may be found; she must comply with Probation's request for information and its directions. Violations of supervised release may result in further imprisonment.

A $100 special assessment is ordered. No fines were imposed because the defendant does not have any assets, and it is unlikely that she will have any in the future, to pay a fine. PSR ¶ 59. Restitution was ordered in the amount of $87,700 to the New York State Department of Education and $1,000 to the Port Authority. Payment for restitution and forfeiture is due six months after defendant is released from prison at in an amount equal to 10% of her net income until her debt is satisfied, subject to application by Probation Services to increase defendant's payments as her economic situation changes.

Respectful consideration was given to the Guidelines, the Sentencing Commission's policy statements, and all other factors listed under 18 U.S.C. § 3553(a) to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The court imposed a non-guideline sentence under 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

Considered was the "nature and circumstances of the offense and the history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a)(1). The sentence imposed reflects the seriousness of the offense and will promote respect for the law and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

The crime committed is extremely serious. Huntley diverted State funds allocated to assist schoolchildren and their parents into her own pockets and those of her family and associates. As an elected official, she violated the sacred trust of her constituents. As a founder of PIN, she violated her promise to improve the educational opportunities of young people. These offenses may not be taken lightly.

Yet, considerable weight must be given to defendant's efforts to improve herself and society. Defendant, who is 74 years old, was born and raised in a middle-income household in Riverhead, New York. *See generally* PSR. She has been married for 53 years. *Id.* Her husband is a retired guidance counselor with the New York City Department of Education. His health deteriorated over the last ten years, and

he depends to a significant degree on defendant's assistance. *Id.* Nor have defendant's three children fared well in recent years. *Id.* Two of her children are suffering from serious other ailments; one of her sons passed away two years ago. *Id.* Defendant herself experiences severe back pain from sciatica and has high blood pressure. *Id.* Defendant's own medical problems and those of her family undoubtedly put her under great financial and emotional pressure.

Aside from the instant offense and related conduct, defendant has exhibited a lifetime of commendable volunteering and public service. She has participated in a number of charitable works and volunteer jobs. She was an educational counselor in the 1960s and a job counselor at the New York Urban League in the 1970s. PSR ¶¶ 55–56. Founded by defendant in 1994 was PIN, the nonprofit organization that was designed to help schoolchildren and their parents enhance their educational opportunities.

Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence. Huntley's cooperation with the government evidences an acknowledgment of a need for self-orientation toward law-abiding conduct. It would suggest, in most cases such as this one, that specific deterrence has largely been achieved. But, Huntley's effort to assist the government is offset by the fact that she lied to the government, which refused to submit a letter on her behalf at sentencing. Time in prison, close supervision after release, and a lifetime of restitution payments will provide sufficient specific deterrence. Given defendant's age, family circumstances, and strong support from the community, it is unlikely she will reoffend.

What is critical in sentencing this defendant is the need for general deterrence. The apparent ease with which some New York State legislators pilfer money from the State through the legislature's "member item" system suggests a strong need for the criminal law's message: those who use their elected positions to abuse the public trust and steal from the State and their constituents will go to jail. General deterrence must be given substantial weight. A period of incarceration is necessary.

## VI. Safeguards Other than The Criminal Law

Attempts to solve the apparently endemic problem of misappropriation of State and local government money through the criminal law is the least effective way of achieving an honest system of government. It would be far more effective in preventing this kind of criminal conduct if a system was in place that proactively prevents—rather than after-the-fact punishes—such abuse. Comity and the limits of federal judicial power will require solutions outside of the federal criminal law to be developed at the state level. As Justice Brandies famously wrote, "It is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country." *New State Ice Co. v. Liebmann,* 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting).

A more effective check on appropriation and expenditure of State funds under individual legislator's control is required.

## VII. Conclusion

The defendant is sentenced as follows: imprisonment of one year and one day; three years' supervised release under the control of Probation Services; restitution

of $87,700 to the New York State Department of Education and $1,000 to the Port Authority of New York and New Jersey, payable beginning six months after defendant's term of incarceration ends, at a rate of 10% her monthly net income; and a special assessment of $100, payable forthwith.

Defendant shall report to the prison designated by the Department of Justice within ten days after designation.

SO ORDERED.