[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11474

_____

D.C. Docket No. 7:11-cr-00007-HL-TQL-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JUAN MANUEL DON-SILVA,
a.k.a. Juan Humberto Vasquez-Hernandz,
a.k.a. Juan Bernardo Silva-Hernandez,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(May 13, 2014)

Before TJOFLAT and PRYOR, Circuit Judges, SCOLA,[*] District Judge.

PER CURIAM:

In July 1998 Juan Manual Don-Silva, a citizen of Mexico, was deported from the United States following a drug felony conviction.  He returned to the United States unlawfully, and in December 2010 he was arrested for driving violations in Lowndes County, Georgia.  In February 2011 the Government obtained a one-count indictment charging Don-Silva with willfully being in the United States unlawfully, in violation of 8 U.S.C. § 1326(a) and (b)(1).  He pled guilty in March 2011, and in June 2011 the United States District Court for the Middle District of Georgia sentenced him to time served plus three years' supervised release[1] and ordered that he be turned over to U.S. Immigration and Customs Enforcement for deportation.  The Government requested supervised release "as a fail safe mechanism"—in case Don-Silva tried to return to the United States illegally.  Among the conditions to his supervised release were (1) that he not re-enter the United States, except by legal means, and (2) that he not commit another crime.  Don-Silva was deported again following his sentencing.

---

[*] Honorable Robert N. Scola, Jr., United States District Judge for the Southern District of Florida, sitting by designation.

[1] The Sentencing Guidelines range for his 8 U.S.C. § 1326 violation was 6 to 12 months. At the time of his sentencing Don-Silva had been in custody of one form or another for approximately 6 months.

He again re-entered the United States unlawfully, and in September 2012 he was arrested in Lowndes County for domestic battery and obstruction of a law enforcement officer.[2]  Shortly after the arrest, the District Court Probation Office petitioned the Middle District of Georgia to revoke his supervised release.  Don-Silva admitted to violating the terms of his release, and the District Court revoked supervised release and sentenced him to 18 months' imprisonment.  He now appeals this sentence as procedurally and substantively unreasonable.

We affirm the District Court's sentence for the reasons given below.

I.

When a defendant violates the terms of his supervised release, 18 U.S.C. § 3583(e)(3) authorizes a court to revoke the release and impose a term of imprisonment.  In deciding what term of imprisonment to impose, a district court must consider the Sentencing Commission's applicable policy statements, which are contained in Chapter 7 of the Sentencing Guidelines Manual, and certain sentencing factors listed in 18 U.S.C. § 3553(a)—e.g., "the nature and circumstance of the offense and the history and characteristics of the defendant," the need "to afford adequate deterrence to criminal conduct," and the need "to protect the public," 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C).  The relevant

---

[2] In February 2013, Don-Silva pled guilty to battery and giving a false name to an officer. He was sentenced to time served plus probation and a fine, and he was then turned over to the U.S. Marshals Service.

3

"offense" or "conduct" in a revocation case is the defendant's breach of the court's trust, committed in violating the terms of his release. See U.S.S.G., Ch. 7, Pt. A, intro. cmt. 3(b). If the violation also constitutes an independent criminal offense (as in Don-Silva's case), the appropriate sentence for the underlying offense is reserved for the court with jurisdiction over that offense. Id. Notwithstanding this general proposition, the Chapter 7 policy statements do "tak[e] into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."[3] Id.

Chapter 7 contains recommended sentencing ranges for varying violations and criminal history categories; the sentencing range is intended to serve as a proxy for the defendant's breach of the court's trust, the seriousness of the violation, and the relevant § 3553(a) sentencing factors. See U.S.S.G. § 7B1.4(a). In Don-Silva's case, the applicable § 7B1.4 range was three to nine months' imprisonment.[4] Because Don-Silva was on supervised release for a Class C

---

[3] For example, violations that constitute violent felonies or drug felonies result in greater advisory sentences, see U.S.S.G. § 7B1.1(a); a defendant's criminal history at the time of his original sentencing determines the length of the advisory sentence, see id. § 7B1.4; and if the violation was a misdemeanor that poses the risk of felonious conduct, the Sentencing Commission suggests an upward departure from the advisory sentence, see id. § 7B1.4, cmt. 3.

[4] The revocation presentence investigation report found that Don-Silva's supervised release violations constituted "Grade C Violations" pursuant to U.S.S.G. § 7B1.1(a). For a Grade C violation, the sentencing court may either revoke supervised release and impose a term of imprisonment or extend or modify the terms of the supervised release. Id. § 7B1.3(a)(2). If the court decides to revoke release and impose a term of imprisonment, the recommended range for a Grade C violation and a criminal category history of I (Don-Silva's criminal history

4

felony, the maximum term of imprisonment for a violation of the terms of his release was two years.  18 U.S.C. § 3583(e)(3).

During the revocation hearing, the Government asked the court to sentence Don-Silva above the recommended range because "we don't believe that [the range] adequately accounts for the seriousness of this offense"—to wit, "[h]e's committed two new offenses since the last time he was convicted," "[h]e has now committed a violent offense," and "he's reentered the United States again in direct contradiction to the orders of the Court the last time he was sentenced."  Defense counsel urged the court to reach a sentence inside the § 7B1.4 range because Don-Silva's most recent convictions were misdemeanors and he only returned to the United States because his life was endangered in Mexico and because his children live in Georgia.

The District Court imposed a sentence of 18 months' imprisonment—twice the upper bound of the advisory range.  It explained its reasons as follows:

> The Court has considered the sentencing guidelines and has taken them into account and has determined that the advisory guideline sentencing range upon revocation is three to nine months . . . .
>
> The Court finds this range to be inadequate, and the Court orders that the term of supervised release be revoked and that the defendant be committed to the Bureau of Prisons for a period of 18 months.

category at the time of his original sentence) is three to nine months.  Id. § 7B1.4(a).  Neither the Government nor Don-Silva objected to this advisory range calculation.

> The sentence as imposed is an appropriate sentence in this case, complies with the factors that are to be considered as set forth at 18 United States Code, Section 3553(a) and adequately addresses the totality of the circumstances.

When asked if there were any objections, defense counsel stated, for the record, that the court's sentence exceeded the advisory range and that such a sentence was greater than necessary to satisfy the § 3553(a) sentencing factors.

In this appeal, Don-Silva now contends that the District Court's sentence was procedurally flawed and is substantively unreasonable.

## II.

The Chapter 7 policy statements, including the recommended terms of imprisonment, are advisory and do not bind the court. United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006). "We review a district court's decision to exceed the Chapter 7 recommended guidelines range for an abuse of discretion." Id. at 798. This review includes two components: first, whether the district court committed a "significant procedural error" in reaching its sentence and, second, whether the sentence was substantively unreasonable, taking into account the totality of the circumstances. Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597, 169 L. Ed. 2d 455 (2007).

## A.

Significant procedural errors include clearly erroneous fact-finding, improper Sentencing Guidelines calculations, failure to consider the § 3553(a)

6

sentencing factors, or failure to explain a given sentence. United States v. Gonzalez, 550 F.3d 1319, 1323 (11th Cir. 2008). On this last point, 18 U.S.C. § 3553(c) requires the sentencing judge to "state in open court the reasons for its imposition of the particular sentence." As the Supreme Court has explained the requirement, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468, 168 L. Ed. 2d 203 (2007).

Don-Silva argues on appeal that the District Court's explanation of his 18-month sentence was insufficient under this standard and, relatedly, that the District Court did not consider the § 3553(a) factors—as evidenced by its failure to explain its application of those factors.[5] As he puts it:

> The district court did not articulate a chain of reasoning connecting its decision to vary, the ultimate sentence it selected, and the offender before it; nor did it explain how its sentence was responsive to the sentencing factors or purposes set forth in 18 U.S.C. § 3553(a), none of which was specifically identified as playing a role in the sentencing decision.

Appellant Br. at 11.

---

[5] He did not raise either objection during the revocation hearing; had he done so, the District Court could have easily addressed the alleged shortcomings then and there. Ordinarily a party's failure to object at sentencing results in plain-error review of any new claims raised on appeal. See United States v. Castro, 455 F.3d 1249, 1251 (11th Cir. 2006). We need not decide whether or how plain-error review would apply to Don-Silva's procedural claims because he cannot establish that the District Court committed an error—plain or otherwise.

While the District Court's explanation was brief, there is no one-size-fits-all rule that requires a sentencing judge to march though a detailed recitation of its reasoning in every case. "The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. . . . The law leaves much, in this respect, to the judge's own professional judgment." Rita, 551 U.S. at 356, 127 S. Ct. at 2468. Accordingly, we have held that a district court is not required to discuss on the record each of the § 3553(a) factors that led it to a particular result. United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). "An acknowledgment the district court has considered the defendant's arguments and the § 3553(a) factors will suffice." Gonzalez, 550 F.3d at 1324. In the context of revocation hearings, "[w]hen exceeding the recommended range, the court must normally indicate that it considered the Chapter 7 policy statements." Silva, 443 F.3d at 799.

Here, the District Court announced that it had considered the Sentencing Commission's policy statements and the § 3553(a) factors. Moreover, the competing arguments presented for and against a longer-than-recommended sentence were straightforward. The Government urged a weightier sentence to account for Don-Silva's blatant disregard for the District Court's earlier order and the fact that he committed two new crimes—one a violent crime. Don-Silva's response was that he had good reasons for re-entering the United States and that

8

his crimes were only misdemeanors.  These competing claims obviously implicate the need for a sentence to accommodate the defendant's breach of the court's trust and, to a lesser degree, the seriousness of the underlying conduct.  While the § 7B1.4 recommended term of imprisonment approximated the sentence required to achieve these objectives, the court was tasked with tailoring Don-Silva's sentence in light of the "nature and circumstances" of his violations—taking into account the defendant's history and the need "to afford adequate deterrence to criminal conduct."  See 18 U.S.C. § 3553(a)(1), (b)(2)(B).

Short as it may be, given that the court was essentially asked to make a judgment based on simple facts and straightforward arguments, the District Court's explanation was sufficient to convey the basis for its decision—that the § 7B1.4 range underestimated the seriousness of Don-Silva's supervised release violations. Cf. Rita, 551 U.S. at 356, 127 S. Ct. at 2468 ("[G]iven the straightforward, conceptually simple arguments before the judge, the judge's statement of reasons here, though brief, was legally sufficient.").  In hindsight, Don-Silva may disagree with the result the District Court reached—an issue we address in reviewing the substantive reasonableness of the sentence—but we cannot say that the record here is so lacking as to prevent meaningful appellate review.

Likewise, we find no basis for Don-Silva's argument that the District Court did not consider the § 3553(a) factors.  The court stated in the revocation hearing,

9

"[t]he sentence as imposed is an appropriate sentence in this case, complies with the factors that are to be considered as set forth at 18 United States Code, Section 3553(a) and adequately addresses the totality of the circumstances."  As we have said, the sentencing judge has no obligation to give an itemized account of his consideration of the § 3553(a) factors.  Again, Don-Silva may disagree with the District Court's weighing of the § 3553(a) factors, but he cannot claim that the District Court failed to consider those factors.

B.

We now turn to his substantive unreasonableness claim.  "The review for substantive unreasonableness involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question."[6]  Gonzalez, 550 F.3d at 1324.  In reviewing the District Court's weighing of these factors, we may only vacate the court's sentence if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence

---

[6] 18 U.S.C. § 3583(e) directs a sentencing judge to consider the following § 3553(a) factors in revoking supervised release and imposing a term of imprisonment: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need for the sentence "to afford adequate deterrence to criminal conduct," (3) the need for the sentence "to protect the public from further crimes of the defendant," (4) the need for the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," (5) the Sentencing Commission's policy statements, (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and (7) "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4)–(7).

that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).  The party challenging the sentence bears the burden of showing that it is unreasonable.  United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007). Where a district court sentences a defendant outside the Sentencing Commission's recommended range, the court of appeals "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."  Gall, 552 U.S. at 51, 128 S. Ct. at  597.

Don-Silva violated the terms of his release by engaging in the very conduct that resulted in the imposition of the supervised release in the first place—entering the United States unlawfully—and in doing so acted in direct contradiction to the District Court's previous order.  The District Court sentenced him within the two-year statutory maximum and, in reaching its decision, considered the Chapter 7 policy statements and the relevant § 3553(a) factors.  Don-Silva's only argument that the District Court abused its discretion in reaching an 18-month sentence is that the court did not give appropriate weight to the § 7B1.4 range or the § 3553(a) factors that counseled against a longer sentence—to wit, that Don-Silva accepted responsibility for his violations, had good reasons for violating the terms of his release, and does not pose a risk to the public.  See Appellant Br. at 19.

"We have consistently held that the policy statements of Chapter 7 are merely advisory and not binding.  While the district court is required to consider the policy statements, it is not bound by them."  Silva, 443 F.3d at 799 (citations omitted).  And "[t]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court."  Clay, 483 F.3d at 743 (quotation marks and citation omitted).  In light of the record before us, we cannot say that the court's 18-month sentence was "outside the range of reasonable sentences dictated by the facts of the case."  See Irey, 612 F.3d at 1190 (quotation marks omitted).

The District Court's sentence is, accordingly,

AFFIRMED.